JAMES ROWLAND V. THE STATE.

1. On an application for change of venue in this murder case, the court below called up the sheriff, clerk of the court, and two deputy sheriffs, and examined them under oath respecting the alleged "prejudice" against the accused, on which his application was based. The affiants stated that they knew of no prejudice which would prevent a fair trial in the county. *Held*, on the authority of Cotton v. The State, 32 Texas, 614, that the ruling of the court below in refusing the change of venue will not be disturbed by this court.

2. Copy of indictment for murder was served on the accused on the twenty-fifth of November, and on the same day he sued out a subpœna for a witness. On the twenty-ninth of November, he sued out an attachment for the witness, who had previously removed to a distant county (according to the affidavit of accused for a continuance), and

by whom he expected to prove an *alibi*. The case came to trial on the same day he sued out the attachment, and he applied for a continuance for want of the witness. *Held*, that the showing of diligence made was not sufficient, and did not bring the case within the statutory rule; and furthermore, this court is satisfied, from an inspection of the whole evidence in the case, that if the absent witness had testified to the *alibi* it would have availed the defendant nothing; wherefore there was no error in overruling the application.

APPEAL from Titus. Tried below before the Hon. J. D. McAdoo.

The opinion of the court indicates the substance of the case, and in the head-notes will be found such other particulars as cast any light on the rulings.

The motive and object of the murder appear to have been the robbing of the peddlers. While Cohn was confined to bed with his wounds, quite a number of men, and among them the appellant, were brought into his room, to afford him an opportunity of identifying any of them as the highwaymen. He picked out the appellant as one of them, and identified him notwithstanding the changes in his apparel, etc.

The penalty assessed by the jury was death.

*Dillahunty & Mitchell,* for the appellant.—The second error assigned is the judgment of the district court overruling the appellant's motion for a continuance. This is the first application for a continuance, and was made little over a month after appellant was arrested, and we think the affidavit contains all that the statute requires. (See Paschal's Digest, page 520, Article 2987.) The Supreme Court has repeatedly held, that on the first application for a continuance, if the statute is complied with, the district court has no discretionary power in the matter, and the continuance must be granted. (See the affidavit for a continuance on pages 9, 10 and 11, and again at pages 39 and 40 of the Record, and the follow-

ing cases: Hipp v. Bissell, 3 Texas Reports, 18 ; Hipp v. Hutchett, 4 Texas Reports 20; Prewett v. Everett, 10 Texas, 283.) The case of De Warren v. The State, 29 Texas Reports, 464, appears to us to be decisive of this. In that case De Warren was indicted on the eighth of March, 1867, for the larceny of a stallion, and tried and convicted on the eleventh of the same month. When the cause was called for trial, he applied for a continuance upon the ground of the absence of material witnesses. The court, we think, very properly held that the application was good, and granted the continuance, to avoid which the State offered to admit that the witnesses named in the affidavit would, if present, swear to the facts set up therein. De Warren insisted, that before he should be forced into a trial, the State must admit that the facts stated in his affidavit were true. The court compelled him to go to trial upon the qualified admission of the State. This ruling is assigned as error, and is the main question in the case. But the Attorney General contended, in his argument before the Supreme Court, that the court below erred in granting the continuance upon the showing made by the appellant ; and that although the order continuing the cause was set aside for a wrong reason, namely, because it was admitted that the appellant's witnesses, if present, would swear to the facts stated in his affidavit, yet, as the court had erred in its order continuing the cause, the judgment overruling the motion for a new trial ought to be sustained. Great stress is laid by the Attorney General on the fact that the appellant in that case had only caused a subpœna to be issued for his witnesses, when the statute required that he should have applied for an attachment ; it was insisted that the issuance of subpœna was no diligence at all. This argument was fully considered by the Supreme Court at

pages 478 and 479 of the volume above referred to, and
the opinion on this point concludes as follows: "And
if the witness be in the State, but at a distance from the·
place of trial so great that a statement of the fact shows·
clearly that it was not possible to obtain his attendance·
or testimony by using the greatest diligence, such facts·
appearing to the satisfaction of the court, must be held
as dispensing with the issuing and sending process that
cannot possibly be executed in time to secure the testi-
mony of the witness." We will now look into the facts·
relating to appellant's trial and conviction. By refer·
ring to the record, pages 3 and 4, it is seen that a copy
of the indictment, with a list of the State's witnesses, was·
served on the appellant on the twenty-fifth of November,
and on the same day he applied for a subpœna for the wit-
ness, and on the twenty-ninth of November he applied
for an attachment for the same witness. (Record, page
10.) On the twenty-fourth of November the court or-
dered a special *venire* to issue for sixty men, returnable·
on Thursday of the third week of the term, and set the·
cause for trial on that day. (Record, page 7.) On the·
twenty-ninth of November appellant filed his motion for·
a change of venue, which was overruled (Record, pages·
7, 8 and 9), and on the same day he filed his affidavit·
and moved the court to continue his case. (Record,.
pages 9, 10 and 11 ; see also pages 39 and 40, which
show that this motion was overruled by the court and·
that he excepted to the ruling.) Thus it is seen that·
but four days intervened between the time of serving·
the appellant with a copy of the indictment and the·
day of his trial and conviction on the State's evidence.
The appellant, in his affidavit for a continuance, states,
on information which he believes to be true, that his
witness, George Brooks, started to remove from Titus
to Hood or Erath county a day or two after his arrest.

He was arrested at Brooks' on the night of the twentieth of October, after he had gone to bed.  (See the evidence of Edwards, sheriff, page 28 of the records.)

From Mount Pleasant, where this case was tried, it is more than two hundred miles by any traveled route to the center of the nearest county mentioned in appellant's affidavit for a continuance.  How, then, could he by any process have had the witness present at the trial? Had the absent witness been present at the trial, and testified to the facts stated in appellant's affidavit for a continuance, it would have devolved on the jury to decide on the credibility of the witnesses, and their means of knowing the facts to which they testified; and it is certain that Brooks, who had resided on appellant's farm nearly a year, would be less likely to be mistaken in the man than the State's witness.  We are aware that crime abounds in our country, and that it is not only right, but necessary, to enforce the penal laws strictly; but in doing so let us not depart from the landmarks of the law erected in better times, and to which we would, sooner or later, feel ourselves constrained to return.  We insist that no man's life should be taken from him by a sentence of the court, consigning him to an ignominious death, before he has had a fair chance to defend himself; and this, we think, we have shown has been denied to the appellant.  We, therefore, with all due deference to the learned court from whose judgment we appeal, pray your honors to allow our appeal, and reverse the judgment of the district court overruling our motion for a new trial, and to remand this cause, to be proceeded in according to law and right.

*Wm. Alexander, Attorney General*, for the State.— The second requisite to be stated in an application for the first time for continuance, as laid down in Arti-

cle 518, Code Crim. Pro., is, "The diligence which has been used to procure his (the witness's) attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for a subpœna, in cases where the law authorizes the issuance of an attachment."

From the statements in the affidavit, it appears that defendant caused a subpœna to be issued for the absent witness on the twenty-fifth day of November, 1871— for a witness who, he had been informed and believed, to have been removed from the county for some length of time; and on the twenty-ninth day of November, 1871, on the day the trial of the cause commenced, he asked for the attachment to which he was entitled on the twenty-third, the day the indictment was found. The obtaining the subpœna in this instance was no act of diligence, but of delay; the failure to demand the attachment at the earliest practicable moment, was want of diligence; and the defendant failed to bring himself within the rule which would enable him to demand the continuance as of right.

But defendant was arrested on the twentieth of October; and during the interval from that day to the date of filing his affidavit, his only effort to secure the evidence of this witness was the issuance of the subpœna and the demand for the attachment above detailed. He knew the witness had removed from the county within a day or two after the twentieth of October, to Hood or to Erath, yet no attempt was made even to ascertain to which of these counties he had gone, much less to obtain his evidence.

WALKER, J.—The disposition of this case imposes upon us a profoundly solemn duty. Casper Abram, on the tenth day of last October, was murdered in cold

blood.  James Rowland and Jesse Reed were indicted
by the grand jury of Titus county, and charged with
the deed.

Two inoffensive men, traveling through the country
as peddlers, Cohn and Abram, were assaulted by high-
waymen.  Abram was instantly killed ; Cohn was shot,.
struck and stabbed, until left for dead by the roadside,.
but recovered from his wounds in time to testify against
one of the murderers.

Reed has not been arrested or brought to trial.
Rowland was tried at the November term of the dis-
trict court for Titus county, and by a jury of his coun-
trymen was found guilty of the murder of Casper
Abram, and was condemned to death.

The evidence against him, both direct and circum-
stantial, was conclusive of his guilt.  He appeals from
the judgment of the district court, and assigns two
grounds for error to the rulings.

1. That the court erred in overruling his motion for
a change of venue.

2. That the court erred in overruling his motion for
a continuance.

Four affidavits were presented to the court in support
of the motion for a change of venue.  The court, fol-
lowing the rule laid down in Cotton v. The State, 32
Texas, 640, called upon four other persons, who were
examined under oath, and testified to the best of their
knowledge and belief, that there was no legal ground
for the motion, whereupon the motion was overruled.

On granting a first continuance, this court has held
in a number of cases, that where the affidavit avers a
compliance with the statute, the court has no discretion
in granting or refusing a continuance.  (See Hipp v.
Bissell, 3 Texas, 18; Hipp v. Hutchett, 4 Texas, 20 ;
Prewett v. Everett, 10 Texas, 283.)  But the statute

must be complied with, which in this case was not done. (Article 2987, Paschal's Digest.) It is not due diligence, nor shall it be so considered, to have caused to be issued, or to have applied for a subpoena in cases where the law authorizes the issuance of an attachment. The affidavit in this case was defective, and did not bring the party within the statutory rule. The professed object in obtaining the evidence of George Brooks was to prove an *alibi;* the affidavit sets out that Brooks resided on defendant's farm at the time the murder was committed, of which the defendant was charged ; and that the defendant was with Brooks all of the day on which it is alleged the mur der was committed, and especially at the hour when Abram was killed.

Had George Brooks been present on the trial, and sworn to the allegations made in the affidavit, his testimony would have been overborne by the testimony of the State's witnesses ; for they testify to seeing him at different times in the day on which Abram was killed, riding about the country in company with Reed, and at other times by himself.

Colonel A. R. Mitchell testifies that he came to his house after his mare and saddle, and that he also got his, Mitchell's, gun, which he returned the same day. The witness says he saw both Reed and Rowland on the day of the killing ; that Rowland came to his house at seven or eight o'clock in the morning ; says he saw Rowland again in the evening, half a mile or so from Mt. Pleasant; that he found his gun at home that evening. He also states that he met Reed on the road, as he left home in the morning for Mt. Pleasant, and that he inquired of the witness for Rowland.

Of course, his honor the district judge could not have known, when a motion for a continuance was pre-

sented, what the State's witnesses might swear to on
the trial; but a reference to the statement of facts has
satisfied us, beyond all doubt, that Brooks' evidence, if
it had been delivered in court before the jury, pre-
cisely to the import of that which is set out in the
affidavit for a continuance, could have availed the de-
fendant nothing, and no injustice was done him by the
overruling of the motion for a new trial.

We must therefore affirm the judgment of the district
court.

                                        AFFIRMED.