JOHN BARNES v. THE STATE.

1. The right to a change of venue is not a Constitutional right, but a legal right, secured upon certain conditions, and the court to which the application is made is to determine whether or not those conditions exist. (Cotton v. The State, 32 Texas, 614, cited by the court.)

2. The State's witness loaned his gun and ammunition to B., who declared his intention to kill M. After B. had started to where the killing took place, witness pursued him and tried to get the gun away. After the killing he went to a house where the accused was and told him that he had better get away from there as there were some people a short. distance off coming in the direction of the house. *Held*, that the witness must be regarded as an accessory after the fact, and in the light of an accomplice; but as there was other evidence in this case corroborating the testimony of this witness, the court declines to disturb the judgment of the court below.

APPEAL from Matagorda. Tried below before the Hon. W. H. Burkhart.

There is no occasion for a statement of facts.

*John W. Harris*, for appellant.

*Wm. Alexander, Attorney-General*, for the State.

WALKER, J. ⚓ The appellant has been twice tried for the murder of Peter McMahon. We need take no notice of that portion of the record which relates to the first trial; whatever irregularities occurred cannot be complained of, as a new trial was granted.

We cannot revise the discretionary power of the court in granting or refusing a change of venue. In Cotton *v.* The State, 32 Texas, 614, this question is fully discussed and determined.

It is therein laid down that the right to a change of venue is not a constitutional right, such as that of trial by jury, but a legal right secured upon certain conditions, and the court to whom the application is made must determine whether or not those conditions exist.

The next question seriously urged against the verdict and judgment is, that it is not supported by the requisite amount of legal evidence. Whether the witness Keller was really an accomplice in the murder of McMahon depends more upon legal definitions than upon facts. He loaned his gun and ammuni-

tion to Barnes, who declared his intention to kill McMahon; but he did this, believing, as he says, that no harm would result from it; that Barnes was not a man of sufficient courage to attack or harm any man.

After Barnes and Barr had started towards the ferry kept by McMahon he pursued them and tried to get the gun away; but his conduct after the murder makes him, in legal definition, an accomplice after the fact, and as such we must treat him.

But his evidence is not unsupported. The report of the gun at the ferry, at or about the time McMahon was killed, was heard by others; the dead body of McMahon was found in the river, and identified by his purse and pocket-knife. The sister of the deceased, and John B. Smith, both swear to threats made by Barnes against the life of McMahon; the body was marked by wounds which were supposed to be gun-shot wounds; the time, place, and manner of the killing, are all corroborated by other witnesses. Barnes and Barr were doubtless together, and were seen near the ferry, about the time McMahon was killed.

Much has been said by courts as to the character and amount of corroborating evidence necessary to support a conviction found upon the testimony of an accomplice. The testimony in this case would bring it within any rule laid down by respectable authority, and there is no doubt in our minds but that the verdict is supported by competent legal evidence.

The judgment is therefore affirmed.

Affirmed.