## EMILE HOUILLION *v.* THE STATE.

1. SPECIAL VENIRE — COPY. — Before the defendant in a capital case can legally be forced to trial, he is entitled to one day's service of a copy of the names of the persons summoned under the special *venire facias;* and a denial of this right is error, if he except in proper time. But, if he fail to assert this right at the proper time, accepts a jury, and suffers the trial to proceed, taking the chances of an acquittal, he waives this right and cannot subsequently assert it.

2. SAME — CASE STATED. — Out of a special *venire* of sixty the sheriff found and summoned but fifty-two, and, they being exhausted before the panel was filled, the remaining jurors were obtained from the jury list for the term. The accused made no objection at the time, and did not exhaust his challenges; but, after verdict against him, he moved for a new trial, on the

ground that, though served with a copy of the sixty names on the special *venire*, he had not been served with a copy of the names of the fifty-two persons summoned under it, and that, until the *venire* was called for the trial, he did not ascertain that eight of the persons named in the copy served on him had not been summoned. *Held*, that the proper time for the objection was when he thus ascertained the fact; and that, not having interposed it then, nor until after verdict, he waived his right to the copy, and his objection could constitute no cause for a new trial.

3. Change of Venue — Counter-affidavits. — It has been settled by repeated adjudications of the Supreme Court and of the Court of Appeals that counter-affidavits are admissible on the hearing of an application for a change of venue.

4. Arrest of Judgment. — That the minutes of the court below do not show that the indictment was presented in open court to the judge by the grand jury, a quorum being present, is not cause for arrest of judgment, though good, if sustained by the record, as an exception to the indictment before plea of not guilty. See an entry sufficient to show a compliance with this requirement of the Code.

Appeal from the District Court of Colorado. Tried below before the Hon. E. Lewis.

Early on February 25, 1876, Matheus Malsch came to a sudden and violent death while traveling the public road from Frelsburg, in Colorado County, to Columbus, the county seat. His body exhibited three stabs in the breast, one gun-shot wound in the hip, and another in the back of the head. According to the medical testimony, either of the three stabs was mortal.

Two witnesses, named Craig, lived some 200 yards from the scene of the homicide, and, a few minutes previous to its commission, saw Emile Houillion ride up the road to-wards the spot. Hearing a pistol-shot, and looking up the road, they saw Houillion pursuing, on horseback, a man who was on foot, and who cried "murder." These witnesses heard a second shot, and one of them testified that it was fired by Houillion. Directly they saw Houillion ride up to a fence and throw something over in the field, where a bloody knife was subsequently found. He then rode rap-idly back and spoke to one of these witnesses, saying that a

man down there had shot at him from behind a tree, but would never shoot at any one else. The ground where the rencounter took place, however, was very muddy, and, on examination, no sign of any one behind a tree was found; nor was any weapon found on or about the deceased.

It was fully proved that for a year or two before the killing a bitter enmity existed between the accused and the deceased. It seems to have been connected with a lawsuit between them, and also with a peculiar correspondence between the deceased and the wife of the accused. Many witnesses were introduced on both sides, eliciting a large amount of evidence pertinent to the mutual relations between the parties, and the causes of their enmity. No useful purpose, however, would be subserved by giving a detail of the evidence.

The charge to the jury apprised them of their power, under the Constitution of 1869, which was in force in February, 1876, to substitute confinement in the penitentiary for life in lieu of the death penalty, in case they found the accused guilty of murder in the first degree. Their verdict was a conviction in the first degree, without an exercise of this power, and the court below adjudged the penalty of death against the accused.

The opinion of this court speaks of the entry upon the minutes of the court below of the presentment of the indictment by the grand jury. It was as follows:

"This day the grand jurors came into open court with their foreman, James C. Abell, and presented the following bill of indictment, to wit: '*The State of Texas* v. *E. Houillion.* Murder.'"

*W. J. Darden*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Ector, P. J.    The defendant was indicted, in the District Court of Colorado County, for the murder of Matheus Malsch on February 25, 1876.    The case was continued once by the defendant.    His second application for a continuance was overruled.    Defendant then filed a motion for a change of venue, which was also overruled.    On the trial of the cause the jury found the defendant guilty of murder in the first degree.    The court overruled defendant's motions for new trial and in arrest of judgment.

The first error assigned is that "the court erred in its rulings as shown by the bill of exceptions filed."    The defendant was tried at the March term, A. D. 1877, of the District Court of Colorado County.    On the trial of the cause a special *venire* of sixty men was drawn in open court, in accordance with section 23 of " An act to regulate grand juries and juries in civil and criminal cases in the courts of the state."    Gen. Laws Fifteenth Legislature, 78.    A copy of the names of the persons drawn on the special *venire* was furnished at once to the defendant.    Only fifty-two out of the sixty persons drawn on the special *venire* were summoned, the sheriff not being able to find the other eight jurors.    There was no objection made by the defendant to this special *venire* until after the verdict of the jury.

After the first special *venire* of sixty men was exhausted, all of the remainder of the petit jurors selected by the jury commissioners for that term of the court were summoned, and the remainder of the panel to try this case were selected from them — the defendant having exhausted only sixteen challenges when the jury was formed.

Article 3022, Paschal's Digest, provides that " No defendant in a capital case shall be brought to trial until he has had one day's service of a copy of the names of persons summoned under a special *venire facias*, except where he waives the right.    But the service may be made at any time after indictment found, whether before or after ar-

raignment.'' One of the grounds set out in defendant's motion for a new trial is '' because he was not served with a copy of the names of the persons summoned on original special *venire*, according to law.''

And, in his bill of exceptions taken to the ruling of the court on his motion for new trial, defendant says that he did not know that eight of the persons on said special *venire* had not been summoned, until the *venire* was called for the trial of the cause.'' This is a virtual admission on the part of the defendant that, when said *venire* was called for the purpose of selecting a jury, defendant then ascertained that eight of the persons on the list of the special *venire* had not been summoned. And, besides, if he did not then ascertain this fact, it is his own fault. It seems to us that then would have been the proper time for him to have raised the objection which he subsequently did in his motion for a new trial. The right granted to him under the article of the Code of Criminal Procedure which we have copied is a personal privilege that he can waive ; and an appellate tribunal will consider this right as having been waived, if not made at the proper time.

Under the law the defendant had a legal right to object to being put upon his trial until he has had one day's service upon him of a copy of the names of the persons summoned under a special *venire facias;* and, if the objection was made at the proper time, and this right should be denied him by the court, he would have a right to his bill of exceptions, and, by appeal, to a reversal of the judgment on account of the rulings of the court in this particular. But if he sees proper to go into court, remain silent as to such service, and, when called upon, pleads to the indictment and suffers .the trial to proceed without objection, taking the chances of being acquitted by the jury, he will be presumed to have waived his right to the service of the copy of said special *venire* upon him as provided by law.

The object of the statute is to give the defendant timely notice, so that he may get a fair and impartial jury. For aught that appears in the record, the defendant got such a jury, and one of his own selection. He had still four challenges left when the jury was complete; and he does not now claim that there was a man upon the jury who was an incompetent juror under the law.

The Supreme Court of Mississippi, in the case of *Loper* v. *The State*, have had occasion to pass upon this question, and from the opinion of the court we make the following extract: "The last objection taken is that the prisoner was not furnished with a copy of the bill of indictment and a list of the *venire* two entire days before the trial, as required by law. The statute requires this to be done, to enable the prisoner to prepare his defense, and his challenges to the jurors. And he cannot be compelled to go to trial without it. He may waive this privilege, however, and consent to a trial immediately; and, if he does, he cannot afterwards object. As the prisoner made no objection in the court below, he cannot object here. * * * The same doctrine is recognized in Chitty's Criminal Law, 405." 3 How. 432.

And the Supreme Court of Louisiana, in the case of *The State* v. *Cook*, 20 La. An. 145, say: "A copy of the indictment and a list of the jury should be served upon the accused before the trial, but it is too late for the accused to raise any objection on that account after the trial."

This court has decided that the acceptance of a jury without objection is a waiver of the right to impeach its organization. *Buie* v. *The State*, 1 Texas Ct. App. 452; *Hasselmeyer* v. *The State*, 1 Texas Ct. App. 690. It is insisted by the defendant's counsel that the opinion of this court in the case of *Speer* v. *The State*, 2 Texas Ct. App. 246, is conclusive of the question. We think not. In that case the defendant was forced to go to trial by the court,

over his objection, he insisting at the time that he was enti-
tled by law to one day's service of a copy of the names of
persons summoned under a special *venire facias*, and that
he did not waive that right.

The second error set out in defendant's bill of exceptions
is that the court erred in overruling defendant's application
for a change of venue. The defendant made an application
for a change of venue, supported by his own affidavit and
the affidavits of Charles J. Mathis and F. G. Frerichs, for
the following causes :

" 1. There exists in the county of Colorado so great a
prejudice that he cannot obtain a fair and impartial trial in
said county.

" 2. That there is a dangerous combination against him,
instigated by influential persons, with all appliances of money ;
by reason of which he cannot expect a fair trial."

The state presented two counter-affidavits, one signed by
J. S. West, J. W. Middlebrook, and J. F. Leyendecker,
and the other by eight other citizens of Colorado County.

Affiants in the first counter-affidavit deny the facts stated
in defendant's application for a change of venue, and in the
second counter-affidavit the affiants say that they and each
of them are personally acquainted with F. G. Frerichs ; that
he is an obscure man, who resides four miles from Frels-
burg, near the upper county line, or in the north corner of
Colorado County ; that he seldom goes out from his home,
and is but little acquainted with the people of Colorado
County outside of his neighborhood ; and that the said
Frerichs cannot possibly know the sentiments of the people
of said county outside of his own neighborhood. Further,
the deponents say that there does not exist in the neigh-
borhood in which Frerichs lives any such prejudice as would
preclude the defendant from having a fair and impartial trial.

It has been well settled by repeated decisions of the Su-
preme Court and the Court of Appeals that counter-affida-

vits will be received and considered on an application for a change of venue. *Buie* v. *The State*, 1 Texas Ct. App. 452 ; *Cotton* v. *The State*, 32 Texas, 614 ; *Rowland* v. *The State*, 35 Texas, 487 ; *Barnes* v. *The State*, 36 Texas, 639 ; *Winkfield* v. *The State*, 41 Texas, 148 ; *Crow* v. *The State*, 41 Texas, 468 ; *Walker* v. *The State*, 42 Texas, 360 ; *Buford* v. *The State*, 43 Texas, 415 ; *Mitchell* v. *The State*, 43 Texas, 512. We cannot say that the court committed any error in its ruling on the application for a change of venue, when we test the facts in the case, as above detailed, by the governing rules and principles discussed and settled in the cases cited. We cannot say that the district judge, in overruling defendant's application for a change of venue, abused the discretion imposed upon him by law.

The second error assigned is that the court erred in its charge to the jury in not giving the defendant the benefit of a charge on the subject of doubt, and that the charge is too indefinite, etc. We do not think the charge is liable to the objections made to it in the assignment of errors. The presiding judge distinctly set forth the law applicable to the case as developed by the facts proved, and his charge concluded as follows : " That if, after weighing all the testimony, facts, and circumstances of the case as detailed in their hearing, they may have a reasonable doubt of the guilt of the accused, they should give him the benefit of such reasonable doubt ; and, if they may have a reasonable doubt as to whether he may be guilty of any offense as hereinbefore defined, they should acquit him." The defendant did not except to the charge, nor ask any additional instructions.

The defendant filed a motion in arrest of judgment, which was properly overruled. The objection came too late when presented for the first time in a motion to arrest the judgment, because the records of the court do not show that the indictment in this case against the defendant was presented

in open court to the judge by the grand jury, a quorum being present. The same question was raised in the case of *Alderson* v. *The State*, 2 Texas Ct. App. 10, and this court said : " This objection to the judgment and the indictment comes too late. It should have been raised on an exception to the indictment before the plea of not guilty was entered."

In the case of *Hardy* v. *The State*, 1 Texas Ct. App. 556, the objection to the indictment was taken at the proper time ; and, on the trial of defendant's motion to quash the indictment, his counsel read in evidence the minutes of the District Court of Newton County, for the April term, 1871, when the indictment purported to have been presented, and, the presiding judge having inspected the minutes of the court of said term, it appeared to his satisfaction therefrom that there was no entry on the said minutes showing that the indictment was by the grand jury delivered to the judge in open court or otherwise, and that there was on the minutes of the court no entry of any kind whatever, made at the said term thereof, of the fact of the presentment of the indictment in court, at the said term thereof, by the grand jury, and that the style of the cause was not noted in the minutes of the court. All of which facts were shown in the bill of exceptions.

It is proper, however, we should state that, if the objection to the indictment in the case at bar had been raised at the proper time, then it should have been overruled. That portion of the motion in arrest which gives what purports to be a copy of the minutes of the District Court of Colorado County is sufficient to show that the indictment is the action of the grand jury of Colorado County, and that the grand jury presented the bill of indictment in open court, and delivered the same to the judge of the District Court of Colorado County, a quorum of said jury being present on such

occasion. *Anderson* v. *The State,* decided by this court, is a case in point. 2 Texas Ct. App. 288.

The law of the case was fairly presented to the jury. We find no error in the charge of the court. The defendant has been convicted on a sufficiency of legal evidence. We have been unable to discover any error in the record calculated to injure the rights of the accused. Feeling the most sacred regard for human life, we have given this case the consideration which its importance demands. We believe that the defendant has had a fair trial and been legally convicted. The judgment of the District Court is, therefore, affirmed.

*Affirmed.*