## TERRY *v.* STATE.

## Opinion delivered July 4, 1921.

1. HOMICIDE—INDICTMENT OF ACCESSORY—SUFFICIENCY.—An indict-ment of one as accessory after the fact to murder in the first degree which alleges the commission of the crime by the principal, and that the defendant, with full knowledge that the principal had com-mitted such crime, "did then and there wilfully, unlawfully and feloniously harbor, protect and conceal said crime" *held* to charge defendant with concealing the principal's crime after full knowledge of its commission.

2. HOMICIDE—TRIAL OF ACCESSORY—EVIDENCE OF PRINCIPAL'S CONVIC-TION.—On the trial of an accessory to the crime of murder, the judgment of conviction of the principal is admissible as *prima facie* evidence of the principal's guilt, so long as it remained in force, though the time for filing a motion for new trial had not then expired.

3. HOMICIDE—CONCEALMENT OF CRIME—QUESTION FOR JURY.—Testi-mony held to warrant the jury in finding that it was the purpose of defendants to shield the principal from detection and arrest.

4. CRIMINAL LAW—TRIAL BY JURY OF COUNTY HAVING TWO DISTRICTS.—Under Const. 1874, art. 2, § 10, providing that in all criminal prose-cutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed, a provision in an act relating to a county having two judicial districts that in selecting jurors in either of said districts the circuit judge may direct that the venire be selected from either or both districts is constitutional.

5. CRIMINAL LAW—WAIVER OF OBJECTION.—Objection that act No. 282 of 1921 required that the presiding judge should first make an order for a special venire from a judicial district other than the one in which the trial was had before such venire can be summoned was waived where the only objection in the trial court was that the act above mentioned was unconstitutional.

6. HOMICIDE—INSTRUCTIONS—SELF-DEFENSE.—Where the defendant's testimony showed that he killed an officer while resisting arrest for the commission of a felony, the mere fact that at the time he shot the officer, the latter was bringing his gun to his shoulder did not make out a case calling for an instruction defining the law of self-defense.

Appeal from Prairie Circuit Court, Northern Dis-trict; *George W. Clark,* Judge; affirmed.

*Brundidge & Neelly,* for appellant.

(1)   The demurrer to the indictment should have been sustained.   The statute defines an accessory after the fact to be a person who, after full knowledge that a crime has been committed, conceals it from the magistrate or harbors and protects the person charged with or found guilty of the crime.   The indictment charges defendants with concealing the crime.   Nothing can be taken by intendment. 94 Ark. 242; 93 Ark. 81; 67 Ark. 308; 43 Ark. 93; 95 Ark. 48; 91 Ark. 5.   The indictment is not sufficient.   88 Pac. 819; 104 Atl. 525.   It does not attempt to follow the language of the statute.

(2)   It is not shown that either of the defendants has knowledge of the commission of the crime by Long.

(3)   Defendants were not guilty if they concealed the crime because of anxiety for their own safety.   43 Ark. 366; 51 Ark. 189; 66 Ark. 16; 51 Ark. 115.

(4)   Defendants were entitled to a trial before a jury of the Northern District of Prairie County.   Art. 2, §10, Const.

(5)   The court erred in giving instruction No. 1.

*J. S. Utley,* Attorney General, *Elbert Godwin,* Assistant Attorney General, and *W. T. Hammock,* Assistant Attorney General, for appellee.

(1)   The demurrer to indictment was propertly overruled.   In 91 Ark. 9, the court declined to follow the construction of the statute given by the California Court.

(2)   The proof was sufficient to sustain a finding that defendants had knowledge of the crime.

(3)   Defendants' contention that they concealed this crime through fear was submitted to the jury.   The verdict is supported by the evidence.

(4)   Defendants were tried by a jury from the county in which the crime was committed.

(5)   Instruction No. 1 is the law.   The conviction of the principal is *prima facie* evidence of his guilt. 1 R. C. L. §§ 153-4.

SMITH, J.   Appellants were separately indicted and

tried. The indictments are identical, and charge each appellant with the crime of being an accessory after the fact to the crime of murder in the first degree. They were convicted, and the punishment of each fixed at ten years in the penitentiary. The proceedings at the trial below are so nearly identical that the appeals have been briefed together as a single case.

The indictment against the appellant Terry reads as follows: "The grand jury of Northern District of Prairie County, in the name and by authority of the State of Arkansas, accuse S. A. Terry of the crime of accessory after the fact to murder in the first degree committed as follows, towit: The said Robert Long in the county, district and State aforesaid, on the 14th day of February, A. D. 1921, unlawfully, feloniously and with malice aforethought, with deliberation and premeditation did kill and murder one Alfred Oliver, by shooting him, the said Alfred Oliver, with a gun then and there loaded with gunpowder and leaden bullets, and had and held in the hands of him, the said Robert Long; and that the said S. A. Terry, after said crime of murder had been committed, and with full knowledge that the said Robert Long, had committed said crime of first degree murder as aforesaid, did then and there wilfully, unlawfully and feloniously, harbor, protect and conceal said crime as aforesaid, against the peace and dignity of the State of Arkansas."

The sufficiency of this indictment is questioned both on demurrer and by a motion in arrest of judgment.

The indictment against appellant Cornall is identical except the use of his name instead of that of appellant Terry.

At each trial the record of the conviction of Long was read in evidence. The trial of the appellant Terry was had the day after that of Long. Objection was made to the introduction of the judgment of conviction against Long for the reason that Long had three days within

which to file a motion for a new trial and sixty days within which to appeal, and that the judgment could not become final until the expiration of that time. Objection was also made and exceptions saved to the action of the court in permitting the attorney who defended Long to testify that there would be no appeal in Long's case. Long was convicted of murder in the first degree and given a life sentence in the penitentiary.

The trial occurred in the Northern District of Prairie County, and in making up the jury jurors residing in the Southern District of the county were accepted. Exceptions were saved to the action of the court in holding these jurors competent.

After the introduction of the record of Long's conviction, the first witness to testify was Long himself. Long was asked if he knew what had become of Alfred Oliver, the person alleged to have been killed by him. Objection was made to this question "because the same is a matter of record evidence, and the record is the best evidence of that fact." In passing upon this objection the court said: "I am going to instruct the jury, gentlemen, when we reach that, that the introduction of that record con stitutes a *prima facie* case of murder in the first degree as against Robert Long, and unless there be testimony contradictory of that record that that is sufficient to establish that allegation in the indictment of the murder of Oliver by Long, the witness now on the witness stand. What else do you want now at this time?"

The State asked witness Long nothing about the circumstances of the killing, but had him relate what had happened after the killing occurred, and a most gruesome story was told. Long was engaged in the illicit manufacture of moonshine whiskey, and after killing Oliver—to whom he referred as the "detective"—he loaded the corpse into a wagon, covered it with quilts and bales of hay, and left his home, where the killing occurred, about dark. He drove to the home of Terry, a distance of about seventeen miles, where he arrived about eleven

p. m. He awakened Terry, and as soon as Terry came out where the wagon was advised him that "We have got a detective out here, and I want you to help me secrete him." Appellant Cornall was called on by Terry to assist, and the corpse was loaded into a boat and carried out into a creek and thrown into the water after a large rock had been fastened to the body. Other details were related by Long which, if true, fully warranted the jury in finding that both Terry and Cornall had consciously assisted in the attempt to cover up the evidence of Long's crime. They admit this to be true, but attempt to excuse their conduct by stating that they were coerced and intimidated by Long. That they were asked by members of searching parties if they knew anything about the disappearance of Oliver, and denied that they did. This they also admit, but explain that conduct by saying that they kept silent and denied their knowledge of the crime because Long had stated he would kill them both if they told what they knew, and that his partner, Bridges, would kill them if he failed to do so. They stated that, as soon as Bridges and Long were taken into custody and they no longer feared for their safety, they told what they knew and carried the searching party to the creek where the body of Oliver was found. Bridges himself testified. He was present at the killing, and stated that, after the corpse was put into the wagon, Long got a tow sack, into which he put the blood and brains of the deceased which had been scattered over the floor. This sack and the bloody blankets were burned at Terry's home.

Just before the conclusion of the cross-examination of the witness Long, counsel for appellant Terry asked the witness if he killed Oliver in self-defense. The court sustained an objection to this question, holding that the witness could not express his opinion as to what constituted self-defense, but that he might tell what was done. Thereupon counsel asked the witness, "What was Oliver doing when you shot him?" The following questions and answers then appear in the bill of exceptions: "A. Rais-

ing his gun. (The witness then made a motion with both of his hands showing Oliver bringing his shotgun up to .his shoulder or bringing it up in a shooting position). Q. Who? A. Alfred Oliver. Q. 'Who on? A. Me.''

This concluded the cross-examination of the witness, and there was no other effort made to show that the killing of Oliver was justifiable.

Exceptions were saved to the action of the court in giving and in refusing to give a number of instructions.

The objections to the indictment are that it does not charge the appellants with concealing the commission of the offense of murder from a magistrate, nor does it allege that appellants harbored and protected Long, the person charged with its commission, and, further, that the indictment is indefinite in its allegations as to the acts of appellants which constituted the concealment of the crime.

The statute under which the prosecutions were conducted reads as follows: ''An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from a magistrate, or harbors and protects the person charged with or found guilty of the crime.'' Section 2310, C. & M. Digest.

This court has had frequent occasion to consider this statute, and a number of the cases are cited in the briefs of respective counsel. In the case of *Stevens* v. *State*, 111 Ark. 299, we considered what affirmative action would be required to constitute one an accessory after the fact. We there quoted from the case of *Davis* v. *State*, 96 Ark. 7, the following statement of .the law: ''The mere passive failure to disclose the commission of the crime would not make one an accessory under our statute. There must be some affirmative act tending toward the concealment of its commission, or a refusal to give knowledge of the commission of the crime, when same is sought for by the officials of the person having such knowledge. It has been held by this court that the fact that the person knowing of a crime conceals his knowledge of its

commission, for his own safety does not raise a presumption that he is an accomplice."

We think the indictments under review meet the requirements of the case cited. The indictments allege that, with full knowledge that Long had committed the crime of murder in the first degree, the appellants "did then and there wilfully, unlawfully and feloniously, harbor, protect and conceal said crime as aforesaid."

The indictments do not allege that the crime was concealed from a magistrate. Its allegations are broader, the fair and reasonable interpretation thereof being that the crime was concealed from all persons. As has been said, we have held that mere silence in the presence of crime, or the mere failure to inform the officers of the law when one has learned of the commission of a crime, does not make one an accomplice. *Stevens* v. *State, supra,* and cases there cited. But appellants are charged with the affirmative act of harboring, protecting and concealing said crime, and when this language is read in connection with that which immediately precedes it in the indictment, as it should be, we think it fairly charges appellants with concealing the crime of Long after full knowledge of its commission.

Cases are cited from the courts of other States which hold the pleader to greater strictness and require the recital of the facts which constitute the concealment of the crime. We do not follow these cases, as they they do not comport with our statute, which provides that an indictment is sufficient if it can be understood therefrom (a) that it was found by a grand jury impaneled in a court having authority to receive it; (b) that the offense was committed within the jurisdiction of the court, and at some time prior to the finding of the indictment; and (c) that the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case. Section 3013, C. & M. Digest.

No error was committed in permitting the judgment

in Long's trial to be admitted. It is true the time for filing a motion for a new trial had not then expired, and, of course, the time for appeal had not expired; but the judgment showed the disposition of the charge against Long. He had been convicted of murder in the first degree, and the judgment recited that fact. It was not conclusive of Long's guilt, so far as Terry and Cornall were concerned, nor would it have been had the time for appeal, or for filing a motion for a new trial, expired, as the court properly held; but that judgment was *prima facie* evidence of the truth of its recital against Long, so long as it remained in force and effect. 1 R. C. L., p. 154, section 35, of the article on "Accessories."

It is insisted that the proof conclusively shows that appellants acted under the coercion of the threats of Long. But at appellant's request the court charged the jury, if the failure of appellants to disclose the information possessed by them was not for the purpose of shielding Long, to find them not guilty. An instruction more favorable could not have been asked, and we think the testimony warranted the jury in finding that it was the purpose of appellants to shield Long from detection and arrest.

The court committed no error in permitting jurors to serve who resided in the Southern District of the county. The insistence of appellants in this respect is that by act 133 (p. 217) of the Acts of the General Assembly of 1885, Prairie County was divided into the Northern and Southern Districts. By section 6 of this act it is provided "That the circuit courts, hereby established in the respective districts of Paririe County shall be as distinct from each other and have the same relation to each other as if they were circuit courts of different counties, and may change the venue of any case from one district to another, or to any other county in the judicial circuit, in like manner as changes of venue are granted in this State." By section 10, of article 2, of the Constitution it is provided that in all criminal prosecutions the accused shall enjoy the right to a speedy and public

trial by an impartial jury of the county in which the crime shall have been committed. Counsel say that when section 6 of the act of 1885 is read in connection with section 10, of article 2, of the Constitution, the right existed to demand a jury coming from the body of the Northern District of the county, where the crime was committed and where the trial occurred.

It appears, however, that by act 282 of the Acts of the General Assembly of 1921, section 6 of the act of 1885 has been amended by the addition of the following proviso: "Provided, however, that, in selecting juries in special venire in said circuit courts in either of said districts of said county, the circuit judge presiding may direct that said venire be selected from the district in which the court is sitting, or from either or both of said districts of said county."

We see no constitutional objection to this amendment. The General Assembly of 1921 had the right to amend the act of 1885. It had the authority to prescribe the practice of the courts of that county, and the authority of the General Assembly was limited only by the restrictions of the Constitution. The guaranty of the Constitution is that the accused shall enjoy the right to a trial before a jury of the county in which the crime was committed—unless the venue is changed. The Northern District of Prairie County and the Southern District of Prairie County are alike parts of that county, and the guaranty of the Constitution is met when jurors are selected from either division of the county.

It is now objected that the act of 1921 requires that the presiding judge shall first make an order for a special venire from the district other than the one in which the trial is had before such venire can be summoned. This, however, was not the ground of the objection in the court below. Counsel expressly stated that it was his purpose to raise the question of the constitutionality of the act of 1921, and if he had also then raised the question now raised it might have been made to satisfactorily appear

that the court had ordered a special venire from the other district of the county.

The court gave an instruction numbered 1 reading as follows: "You are instructed that the record read to you by the clerk of this court makes a *prima facie* proof of the charge contained in the indictment that Robert Long killed Alfred Oliver in the form and manner charged in the indictment and in the killing thereof it is *prima facie* proof by such record that he was guilty of murder in the first degree and that the State is not required, unless such record be contradicted, to produce additional proof upon this issue."

As we have said, this is a correct statement of the law. But after giving this instruction the court refused instructions requested by appellants defining the law of self-defense. It is very earnestly insisted that the refusal to give these instructions constituted reversible error, as the cross-examination of Long, set out above, tended to show that Long had killed Oliver in self-defense. We do not think the testimony presents that issue. The court gave appellants permission to show that the killing of Oliver by Long was justifiable; but no other effort was made to show that such was the case. Long was not asked to detail the circumstances leading up to the killing. It is fairly inferable—and the jury no doubt found—that, while resisting arrest for the commission of a felony, Long killed an officer of the law who was in the discharge of his duties in making an arrest. *Coats* v. *State,* 101 Ark. 51. The statement that Oliver was bringing his gun to his shoulder does not, under the circumstances detailed by the witness, make a case of self-defense, and the court did not err in refusing to submit that question to the jury.

Numerous errors are assigned in giving and in refusing to give instructions. We do not discuss these instructions in detail, as the questions raised have been many times considered by this court, and a discus-

sion of these assignments of error would unduly protract this opinion.

The court gave a very elaborate charge, included in which were a number of instructions requested by appellants which submitted their theory of the case to the jury. These instructions, as a whole, fairly and fully submitted the case; the evidence is legally sufficient to support the verdict; and, as no error of law appears, the judgment in each case is affirmed.