FIELDS v. STATE.

4519                                    214 S. W. 2d 230

Opinion delivered October 11, 1948.
Rehearing denied November 8, 1948.

*U. C. May* and *R. S. Dunn,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was tried upon the charge of murder in the first degree, alleged to have been commit-

ted by killing one Earl Hornsby. He was convicted as an accessory after the fact to the commission of that crime and given a sentence of six years in the penitentiary, and from that judgment is this appeal.

A reversal of this judgment is asked upon the ground that the testimony is insufficient to support the finding that appellant committed this crime. The testimony shows that a party consisting of three women and three men spent an afternoon in revelry at the home of appellant, referred to as his shack, in making music, singing and drinking whiskey.

The witnesses who testified were secretive and as uncommunicative as possible. Appellant himself did not testify. He was armed with a pistol, which he fired about 11:00 p. m., but it is not disclosed for what purpose he fired it. No one was shot. Hornsby was killed soon after the pistol had been fired. He was stabbed with a pocket knife. His throat was cut and a doctor who examined the wound testified that Hornsby had lived probably fifteen minutes. He was stabbed while in the shack, but the body was found the following morning outside the shack, but near the door. How Hornsby got outside the door is not clear, but the implication is that the body was carried from the room outside the shack. Stella Upshaw, a member of the party, testified that she saw Roy Capes strike Hornsby, who had not assaulted Capes, and that Hornsby slumped down in the doorway.

May Morris, who had been a member of the party, testified that she left and on her return she asked Capes and appellant what had happened during her absence. She was told to shut up. She asked if she was going to be mixed up in the affair and they told her not if she did not know anything, and appellant then said that they had a dead man on their hands. A knife, evidently the one with which Hornsby was killed, was found in a box in the shack. The party dispersed and this witness testified that when she left, only appellant remained.

When Hornsby's body was found on the morning following his death, the shack was locked and appellant was not at home. He made no report of the killing until

after his arrest when he told the officers that Capes was the man they were looking for. Appellant made no attempt to conceal Hornsby's body, further possibly than to take it out of the room, but he did attempt to prevent any disclosure as to the manner of the killing when he told May Morris that she would not be "mixed up in this" provided she knew nothing, which could mean only, or at least the jury might have found, meant that she was to give no information about the killing, and he had given none.

Appellant may have been something more than an accessory after the fact. When he was arrested blood was found on his clothes and shoes and under his finger nails. His explanation to the officers when they called these facts to his attention was that he had killed a chicken.

It is clearly established that the killing occurred in appellant's presence and in his room, and the knife with which the fatal blow was inflicted was found in a box in his room, and he not only made no report of a crime which he had witnessed, if he had not actually participated in its commission, but he attempted to thwart an investigation by telling May Morris she would not be mixed up in the matter provided she knew nothing.

Section 2936, Pope's Digest, reads as follows: "An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime."

In the case of *Terry* v. *State*, 149 Ark. 462, 233 S. W. 673, it was said: "In the case of *Stevens* v. *State*, 111 Ark. 299, 163 S. W. 778, we considered what affirmative action would be required to constitute one an accessory after the fact. We there quoted from the case of *Davis* v. *State*, 96 Ark. 7, 130 S. W. 547, the following statement of the law: 'The mere passive failure to disclose the commission of the crime would not make one an accessory under our statute. There must be some affirmative act tending toward the concealment of its commission, or a refusal to give knowledge of the commission of the crime,

when same is sought for by the officials of the person having such knowledge. It has been held by this court that the fact that the person knowing of a crime conceals his knowledge of its commission, for his own safety, does not raise a presumption that he is an accomplice.' ''

We think the testimony sustains the finding that there was something more than the mere passive failure to inform the officers of the crime, but that there was rather an affirmative attempt to prevent the disclosure of its details.

Capes was indicted for killing Hornsby, and was found guilty of murder in the first degree, and was given a life sentence in the penitentiary, which he is now serving. Appellant was found guilty and given a sentence of six years in the penitentiary, as an accessory to the crime of murder in the second degree. There was no error in this.

Initiated Act No. 3, adopted at the 1936 general election, appears at p. 1384 *et seq.* of the Acts of 1937 and is entitled, ''An Act to Amend, Modify, and Improve Judicial Procedure and the Criminal Law and for Other Purposes.'' Section 25 of the Act, which appears as § 3276; Pope's Digest, reads as follows: ''The distinction between principals and accessories before the fact is hereby abolished, and all accessories before the fact shall be deemed principals, and punished as such. In any case of felony, when the evidence justifies, one indicted as principal may be convicted as an accessory after the fact; if indicted as accessory after the fact, he may be convicted as principal.''

But this section of the initiated act makes no change in the punishment of accessories after the fact. It is a procedural act, relating to the indictment and prosecution of accessories and abolishes the distinction so far as the indictment is concerned, but it does not affect the punishment of accessories as provided in § 2939 of Pope's Digest which reads as follows: ''Accessories before the fact to all other felonies shall receive the same punishment as principals, and all accessories after the fact shall receive the same punishment as their principals, except

in cases of murder in the first degree, who shall be punished as principals in murder in the second degree. Provided, that persons standing to the accused in the relation of parent, child, brother, sister, husband or wife shall not be deemed accessories after the fact, unless they resist the lawful arrest of such offenders.''

Prior to the initiated act it was required that an accessory be indicted as such. *Burns* v. *State,* 197 Ark. 918, 125 S. W. 2d 463. But since the initiated act an accessory after the fact may be indicted as a principal as was done in the instant case, but if convicted he is punished, not as principal in murder in the first degree, but as a principal in murder in the second degree. The reason for the distinction no doubt was that to constitute murder in the first degree deliberation and premeditation are required, whereas the guilt of an accessory after the fact arises from conduct after the killing has been committed. There was therefore no error in the distinction between the verdict in appellant's case from that in Capes' case. Appellant may have been an accessory before the fact, but the jury did not so find, and if there was any error in this respect, it is one of which appellant cannot complain.

No error appears and the judgment will be affirmed, and it is so ordered.