[Crim. No. 4802.   Third Dist.   Jan. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EARL L. DUTY, Defendant and Appellant.

100

Neri Ramos, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—After Barbara Jenner had been convicted of arson in wilfully setting fire to her home, a jury found defendant Earl Duty guilty as an accessory to Mrs. Jenner's crime. He appeals from the judgment.

Penal Code section 32 defines an "accessory" as follows: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

The constituent elements of the accessory offense have been summarized as follows: "The crime of being an accessory is a complex one, being composed of the following elements, each of which must be alleged and proved by the prosecution: (1) someone other than the accused, the principal to the crime, must have committed a specific, completed felony; (2) the accused must have harbored, concealed or aided the principal; (3) the element of *scienter* must be present in this, that the accused must have had knowledge that the principal has committed a felony, or has been charged or convicted thereof; (4) the element of specific intent must have been present, namely, that the accused must have harbored, con-

cealed or aided with the intent that the principal may avoid or escape from arrest, trial, conviction or punishment.'' (*People* v. *Hardin,* 207 Cal.App.2d 336, 341 [24 Cal.Rptr. 563]; see also, *People* v. *Wayne,* 41 Cal.2d 814, 826 [264 P.2d 547]; *People* v. *Collum,* 122 Cal. 186, 187 [54 P. 589].)

Defendant charges absence of proof of *scienter* and specific intent. ■ The test on appeal is whether there is substantial evidence, including inferences reasonably deduced from facts in evidence, to support the finding of guilt. (*People* v. *Bard,* 70 Cal.2d 3, 4, 5 [73 Cal.Rptr. 547, 447 P.2d 939]; *People* v. *Hall,* 62 Cal.2d 104, 109-110 [41 Cal.Rptr. 284, 396 P.2d 700]; *People* v. *Daugherty,* 40 Cal.2d 876, 885-886 [256 P.2d 911].) ■ State of mind, such as *scienter* or specific intent, is a question of fact, and if the evidence reasonably justifies the fact finder's inference that the state of mind existed, the finding will not be disturbed on appeal. (*People* v. *Tolstoy,* 250 Cal.App.2d 22, 25 [58 Cal.Rptr. 148]; see, e.g., *People* v. *Bard, supra.*)

Mrs. Jenner's home in the City of Oroville was seriously damaged by a fire during the early morning hours of January 22, 1967. Uncontradicted evidence pointed to a fire which had been deliberately set. At approximately 2:45 a.m., before the fire's outbreak, George Kelly, a neighbor, noticed Mrs. Jenner's car parked in her driveway. Somewhat later, at 3:25 a.m., Officer Gerald Bryson noticed a car parked outside the Table Mountain Tavern. He looked it over, identified it as the car belonging to Mrs. Jenner and saw a table television set, blankets and household items in the back seat. The record does not indicate the distance between the Table Mountain Tavern and Mrs. Jenner's home. It does show that after Officer Bryson observed Mrs. Jenner's car, he drove away from the tavern, noticed a glow in the sky, drove toward it and found Mrs. Jenner's house in flames. Fire equipment arrived about five minutes later. A city fire marshal, Harold Ogle, also arrived. Bryson and Ogle conferred briefly. Ogle then left the fire scene and drove to the Table Mountain Tavern, where Bryson had seen Mrs. Jenner's car. He arrived there at about 3:45 a.m. Mrs. Jenner's automobile was no longer there.

Ogle testified that he had arrived at the fire at 3:35 a.m. In his opinion the fire had commenced approximately 15 minutes earlier.

The day after the fire Ogle interviewed Mrs. Jenner, who told him that she had been with defendant the previous night. Three days later, on January 25, Ogle called on defendant in

company with William Hull, an insurance investigator. They told defendant they were investigating an ''arson fire'' at Mrs. Jenner's house. At their request, defendant gave them an oral statement describing his and Mrs. Jenner's activities on the night of the fire. Defendant had come to Mrs. Jenner's house that evening. They then drove to the Oroville Inn, defendant in his car and Mrs. Jenner in her own, arriving there about 8:30 p.m. Both parked outside the Inn. About 9 o'clock they left the Oroville Inn in defendant's car, leaving Mrs. Jenner's car where she had parked it earlier. They drove together to the Moose Lodge in Gridley, where defendant, a musician, was playing for a party, arriving there about 9:30 p.m. About 2:15 a.m. defendant and another musician took their musical equipment out to the former's car and found Mrs. Jenner asleep in the front seat. According to defendant's statement to the investigators, he then drove with Mrs. Jenner to San Francisco, registered at a motel, stayed there less than an hour, left about 6:30 or 7 a.m. and drove back to Oroville, arriving there at 10 or 10:30 a.m., found Mrs. Jenner's car parked in front of the Oroville Inn where they had left it the preceding evening.

Mrs. Jenner was called by the prosecution. She testified that she and defendant had left her car at the Oroville Inn and had driven to the Gridley Moose Lodge in his car, arriving there about 9:30 p.m. She drank liquor at the Moose Lodge and went outside to defendant's car, where she ''passed out.'' Later she was conscious of being bumped in the head as defendant and a companion were loading equipment in the car. She went back to sleep and did not resume consciousness until about 11 o'clock in the morning. At that time, she testified, she and defendant were parked beside a highway. They drove to Oroville, where she picked up her car outside the Oroville Inn. She admitted that she had been convicted of the arson.

Defendant testified in his own defense. His description of the events on the night of the fire roughly paralleled Mrs. Jenner's testimony.

On rebuttal, Hull, the insurance investigator, corroborated Ogle's description of their interview with defendant. Hull described a warning of ''constitutional rights'' given to defendant at the outset of the interview.

From the prosecution evidence the jury could reasonably infer that defendant and Mrs. Jenner had been together during the entire night; that Mrs. Jenner had left the Moose

Lodge in Gridley with defendant about 2:15 a.m., picked up her car at the Oroville Inn, drove to her house, loaded the car with household goods, set the fire about 3:20 a.m. and drove away; that defendant had been with her during these activities. From this set of inferences several alternative corollaries were available: (a) Defendant actively aided and abetted the arson, incurring liability as a principal in the crime under Penal Code section 31.[1] (b) He aided and concealed Mrs. Jenner by assisting her to remove her household goods from the scene, incurring liability as an accessory under section 32. (c) He was nothing but a bystander, one who had an opportunity to act but did not.[2] Evidentiary justification for one or another of these conclusions is not a problem, for the evidence goes farther. Suffice it to say that the prosecution evidence at this point supports a finding of the first element of the accessory offense, the principal's commission of a specific felony, arson.

The additional evidence is defendant's inferably false statement to Ogle, a public investigator. This statement placed defendant and Mrs. Jenner in his car enroute to San Francisco at the time of the fire and placed her automobile at its parking place outside the Oroville Inn during the entire night and well into the morning. The prosecution evidence, in contrast, placed Mrs. Jenner's car at her house in Oroville at 2:45 a.m. approximately 35 minutes before the probable commencement of the fire, and put it outside the Table Mountain Tavern, loaded with her household goods, a few minutes later.

Whether a falsehood to the police or other public investigators may violate the accessory statute is a new question in California. According to some American decisions, the offense is not committed by passive failure to reveal a known felony,[3] by refusal to give information to the authorities,[4] or by a

[1]Penal Code section 31 provides, in effect, that a person who aids and abets in the commission of a crime, as well as one who directly commits the offense, is a principal in the crime so committed.

[2]See *People* v. *Luna*, 140 Cal.App.2d 662, 664 [295 P.2d 457]; *People* v. *Cooper*, 81 Cal.App.2d 110, 116 [183 P.2d 67]. Although the prosecution evidence permits a suspicion that defendant aided and abetted the arson, he does not claim that liability to prosecution as a principal bars his conviction as accessory after the fact. (See *People* v. *Wallin*, 32 Cal.2d 803 [197 P.2d 734].) There is no necessary inconsistency between presence at the crime and status as an accessory after the fact. (*Smith* v. *United States*, 306 F.2d 286.)

[3]*Fields* v. *State*, 213 Ark. 899 [214 S.W.2d 230]; *Lowe* v. *People*, 135 Colo. 209 [309 P.2d 601]; *Ex parte Overfield*, 39 Nev. 30 [152 P. 568]; *Commonwealth* v. *Giacobbe*, 341 Pa. 187 [19 A.2d 71].

[4]*Farmer* v. *State*, 56 Okla. Crim. 380 [40 P.2d 693].

denial of knowledge motivated by self-interest.[5] On the other hand, an affirmative falsehood to the public investigator. when made with the intent to shield the perpetrator of the crime. may form the aid or concealment denounced by the statute.[6]

The gist of the offense described by section 32 of the California Penal Code is that the accused "harbors conceals or aids" the principal with the requisite knowledge and intent. Any kind of overt or affirmative assistance to a known felon may fall within these terms.[7] A person may be charged under section 32 when he aids the principal in concealing the latter's crime.[8] "The test of an accessory after the fact is that, he renders his principal some personal help to elude punishment,—the kind of help being unimportant." (1 Bishop's Criminal Law, 500, § 695.)

The evidence here shows more than passive non-disclosure. The jury could reasonably find that defendant had actively concealed or aided Mrs. Jenner by supplying an affirmative and deliberate falsehood to the public authorities, a false alibi which removed the principal from the scene of her crime and placed her on the highway enroute to San Francisco at the time when the fire must have been set. In determining the knowledge and intent of the aider, the jury may consider such factors as his possible presence at the crime or other means of knowledge of its commission, as well as his companionship and relationship with the principal before and after the offense. (See *People* v. *Perryman*, 250 Cal.App.2d 813, 820 [58 Cal.Rptr. 921].) The evidence provided a rational basis for the conclusion that defendant knew of Mrs. Jenner's arsonous activity at the time of the false alibi and supplied it with the specific intent of shielding her from prosecution and punishment. There was substantial evidence to prove all four elements of the accessory offense.

[5]*Crosby* v. *State,* 179 Miss. 149 [175 So. 180]; *State* v. *Potter,* 221 N.C. 153 [19 S.E.2d 257]; *Findley* v. *State* (Tex. Crim. App.) 378 S.W.2d 850.

[6]*State* v. *Potter, supra,* 19 S.E.2d 257; *Blakeley* v. *State,* 24 Tex. Crim. Rep. 616 [7 S.W. 233]; 22 C.J.S., Criminal Law, § 99, pp. 278-279; cf. *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868]; *People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; Pilcher, *The Law and Practice of Field Interrogation* (1967) 58 J. Crim. L.C. & P.S. 465, 477-478.

[7]*Fields* v. *State, supra,* 214 S.W.2d 230; *Lowe* v. *People, supra,* 309 P.2d 601; *Maddox* v. *Commonwealth* (Ky.) 349 S.W.2d 686; *State* v. *Potter, supra,* 19 S.E.2d 257; *Blakeley* v. *State, supra,* 7 S.W. 233; 22 C.J.S., Criminal Law, § 99, pp. 276-277; see Grimm. *Principals, Accessories and the Continuing Crime* (1960) 51 J. Crim. L.C. & P.S. 66, 67.

[8]*People* v. *Wallin, supra,* 32 Cal.2d at p. 807.

■ Defendant assigns a number of errors without regard to the absence of necessary foundational objections at the trial court level. To a major extent these claims represent nothing more than a disagreement between the attorney who defended him in the trial court and his counsel on appeal. We find no failure of adequate representation on the former's part.

■ The claim is made that evidence of defendant's extra-judicial statement to the investigators was admitted without proof of the warning and waiver specified in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974]. The claim raises a number of questions—whether in fact the warning complied with *Miranda* requirements and whether, under the circumstances of the interrogation, the warning was demanded by law. (See *People* v. *Oster*, 260 Cal.App.2d 539, 543-544 [67 Cal.Rptr. 361]; *People* v. *Butterfield*, 258 Cal.App.2d 586, 589-591 [65 Cal.Rptr. 765]; Pilcher, *op. cit.*, fn. 6, *supra*.) The claim is unavailable on appeal because the statement came in without objection in the trial court. (*People* v. *Huddleston*\* (Cal.App.) 69 Cal.Rptr. 857; *People* v. *Castro*, 257 Cal.App.2d 643, 645 [65 Cal.Rptr. 62].)

■ Defendant assigns error in a standard jury instruction (CALJIC 76) defining the word "knowingly." The trial transcript contains a discussion of proposed instructions among the trial judge and the attorneys, in which defendant's trial counsel specifically stated that he had no objection to this particular instruction. Defendant's acquiescence in the instruction prevents him from assailing it on appeal. (*People* v. *Clark*, 117 Cal.App.2d 134, 141 [255 P.2d 79].)

■ Defendant charges the prosecutor with misconduct in arguing to the jury that defendant gave his false statement "to mislead the police." The argument was fair comment. The prosecutor is charged with misconduct in twisting the concept of proof beyond a reasonable doubt by urging the jury to view the evidence reasonably. Neither statement was assigned as misconduct in the trial court, neither is prejudicially erroneous and neither supplies ground for reversal.

■ Defendant makes a due process attack on Penal Code section 32 as applied in this case. As we understand it, his theory is that prosecution proof of a false alibi as the gravamen of a violation of section 32 deprived him of the presumption of innocence, shifted to him the burden of proving the alibi's truth and forced him to take the stand in violation of

---

\*A rehearing was granted on July 25, 1968.

his Fifth Amendment right to silence. The trial court gave the standard instructions on presumption of innocence and proof beyond a reasonable doubt. As in any other criminal case, the burden of proving guilt beyond a reasonable doubt remained upon the prosecution throughout the entire case. (Pen. Code, § 1096; Evid. Code, §§ 115, 501; see Law Revision Com. comment to § 501.) The law furnishes many instances of a false statement as the gravamen of a crime. When the prosecution submits its evidence, the defendant may remain silent, rely upon the presumption of innocence and argue that the prosecution failed to prove that he made the statement; or argue the statement's truth; or argue absence of requisite intent. If he takes the stand in his own defense, he is impelled not by any presumption against him but by his fear of the convincing force of the prosecution's proof. No presumption required defendant's trial jury to infer that the statement was false or, if it found falsity, to draw an inference of guilty intent. The fabrication of a false alibi permitted but did not require an inference of his guilty state of mind. ██ To infer one fact from another is consistent with due process if there is a rational connection between the two; that kind of inference in no way impairs the presumption of innocence. (*People* v. *McFarland*, 58 Cal.2d 748, 755-756 [26 Cal.Rptr. 473, 376 P. 2d 449].) Defendant's constitutional argument has no merit.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.