**UNITED STATES**

**v.**

**Airman First Class Kenneth L. MANUEL, FR 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, United States Air Force.**

**ACM S24749.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 16 March 1979.

Decided 7 Dec. 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Colonel James P. Porter and Captain Robert T. Mounts.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

DECISION

HERMAN, Senior Judge:

While we find that one who encourages a thief not to return stolen property is an accessory after the fact, we set aside the sentence as a result of the trial judge's error in effectively placing a burden upon the accused to present evidence in order to avoid a bad conduct discharge.

A military judge sitting as a special court-martial convicted the accused, consonant with his pleas, of accessory after the fact to larceny, of a subsequent unrelated larceny, and of willful destruction of an M-16 rifle, violations of Articles 78, 121, and 108, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 878, 921, 908.

In their assignment of error, appellate defense counsel allege that the accessory specification fails to state an offense. The pertinent portion reads:

> [I]n order to prevent the apprehension of the said Airman Wadsworth, [the accused did] assist the said Airman Wadsworth by concealing the fact that said offense of larceny had been committed, and by encouraging the said Airman Wadsworth not to return the rifle to its rightful owner, the United States Air Force.

The facts of record disclose that the accused and an Airman Wadsworth were assigned as security guards at a radar compound. They decided to hide the rifle of another airman "as a joke or prank to teach him a lesson." After unsuccessfully seeking a place to hide it, Wadsworth removed it from the gate shack, and announced to the accused that he was about to take the weapon. The accused effectively divorced himself from the enterprise at that point, and Wadsworth hid the rifle in some bushes, later retrieved it and eventually threw it over the fence of the compound into some tall grass.

At the end of their shift of duty, Wadsworth and the accused were driven to the armory to turn in their weapons and left the armory in Wadsworth's car. They drove back to the radar site, and, after the accused refused Wadsworth's request to retrieve the rifle, the latter did so and placed it in the car. Wadsworth then stated that he thought they should return the rifle, and the accused replied that they could not, since leaving it outside the armory might result in an unauthorized person finding it with the possibility of injury. He explained that if they were to turn it in, Wadsworth would go to jail, and suggested that they should dismantle the rifle and scatter the parts. As they drove away, the accused began to take the rifle apart, and he threw a number of parts off a bridge as they were driving. On the other side of the bridge, both Wadsworth and the accused threw the remaining parts in the water.

We are concerned with the events transpiring after Wadsworth declared that they

should return the rifle; in particular whether the accused's statements or behavior *as charged*, provided the necessary "assistance" to Wadsworth to constitute the offense of accessory after the fact under Article 78,[1] Code, supra. The Manual for Courts-Martial, 1969 (Rev.), paragraph 157, explains,

> The assistance given a principal by an accessory after the fact is not limited to assistance designed to effect the personal escape or concealment of the principal, but includes those acts which are performed to conceal the commission of the offense by the principal. Thus, a person is an accessory after the fact if, knowing that a crime has been committed, he assists and aids in concealing or suppressing evidence thereof. However, mere failure to report a known offense will not constitute one an accessory after the fact.

There can be no doubt that this accused's acts of destroying and disposing of the rifle fit precisely within the definition of the offense, as they were designed to conceal or suppress evidence of the crime; but, the specification does not so read. Instead, *concealing* the commission of the crime and *encouraging* the thief not to return the rifle are the allegations. Concealing a crime may constitute one an accessory, but paragraph 157 of the *Manual*, supra, requires affirmative *acts* of assistance by the accused; none are alleged. Therefore, the simple concealment alleged amounts to no more than a failure to report an offense; by the very terms of the *Manual*, this does not constitute one an accessory after the fact.[2] Therefore, we shall treat the language of the specification which relates to concealing the larceny as surplusage, and focus upon that which alleges the encouraging of Wadsworth not to return the rifle.

The gravamen of the offense of accessory after the fact lies in the obstruction of justice by rendering personal assistance to an offender after he has committed the offense, so as to hinder or prevent his arrest or punishment. The assistance rendered ordinarily consists of an affirmative act, such as driving him from the scene of the crime, concealing the evidence, or hiding the offender.[3] Other courts have found accessory after the fact where one advises the principal offender how to avoid police detection,[4] persuades a potential witness that he should give no information [5] or false information,[6] suggests to a young principal's mother that the principal probably would not be prosecuted if he left the country,[7] warns the principal of the approach of police,[8] or plans to dispose of the victim's body and prepares a written statement for the principal's signature.[9]

We are persuaded that the accused in this case played considerably more than a passive role, since by encouraging Wadsworth not to return the rifle, he was affirmatively attempting to prevent disclosure or dis-

1. "Any person subject to this code who, knowing that an offense punishable by this code has been committed, receives, comforts, or assists the offender in order to hinder or prevent his apprehension, trial or punishment shall be punished as a court-martial shall direct."

2. *United States v. Smith*, 5 M.J. 129 (C.M.A. 1978). Even where made a crime by statute, the failure to report an offense must be accompanied by some affirmative action. 18 U.S.C. § 4, Misprison of a Felony; *Neal v. United States*, 102 F.2d 643, 649–50 (8th Cir. 1939), cert. denied, 312 U.S. 679, 61 S.Ct. 448, 85 L.Ed. 1118 (1941).

3. *United States v. Barlow*, 152 U.S.App.D.C. 336, 344–5, 470 F.2d 1245, 1253–4 (D.C. Cir. 1972); *Government of Virgin Islands v. Aquino*, 378 F.2d 540, 553 (3d Cir. 1967); 1 Wharton, Criminal Law and Procedure § 112 (Anderson ed. 1957); IV Blackstone, Commentaries 37–8.

4. *McClain v. State*, 10 Md.App. 106, 268 A.2d 572 (1970). The advice was followed by hiding the murder weapon, but the Court seemed to consider the advice itself significant.

5. *Fields v. State*, 213 Ark. 899, 214 S.W.2d 230 (1948).

6. *Blakely v. State*, 24 Tex.App. 616, 7 S.W. 233 (1888).

7. *Stevens v. State*, 111 Ark. 299, 163 S.W. 778 (1914).

8. *Barnes v. State*, 36 Tex. 639 (1872).

9. *State v. Martin*, 30 N.C.App. 166, 226 S.E.2d 682 (1976).

covery of the offense.[10] In fact, his encouragement was the moving force resulting in the eventual destruction of the rifle. Such assistance was intended to personally assist Wadsworth in avoiding apprehension, a manifest obstruction of justice.[11] We therefore find the specification sufficient to allege the offense of accessory after the fact.

We do not leave the subject of accessories, however, since recent cases which confirm the concept that larceny is a continuing offense[12] require further discussion. One is not an accessory after the fact if the felony is still in progress when the assistance is rendered, since he is aiding in the commission of the offense and is thus guilty as a principal.[13] Furthermore, the *purpose* of the assistance rendered is critical. If it is to secure the fruits of the crime, the aider becomes a participant in the larceny and is chargeable for that offense; but if his motive is to assist the perpetrator to escape detection and punishment, he is properly charged as an accessory after the fact.[14]

The facts of the case before us suggest, at least superficially, that the accused should have been charged as a principal to the larceny since that offense continued in progress until the ultimate destruction of the rifle. However, the evidence clearly establishes that this accused's purpose in encouraging Wadsworth not to return the rifle, but rather to destroy it, was to assist him to avoid detection and prosecution. Although Wadsworth thought they should return the rifle, the accused pointed out that he (Wadsworth) would go to jail if they did so and suggested that the weapon should be dismantled and scattered.

The accused was not a participant in the larceny, and had no interest, possessory or other, in the rifle. The purpose of dismantling the rifle and scattering the parts was not to secrete it for later use in furtherance of the consummation of the theft, but to assist Wadsworth, the principal, in frustrating and obstructing law enforcement processes. Therefore, the accused was properly charged as an accessory after the fact and not as a principal.

The final issue,[15] concerning the impartiality of the trial judge, arose from his colloquy with defense counsel, during the inquiry relative to the providence of the accused's pleas of guilty.

MJ: Captain [G.], I've got enough at this point to accept the plea of guilty. I don't see any problem with accepting the plea of guilty. Do you, during any other portion of the trial, expect to somehow explain to the court or how the court can be assured that he's not going to commit larceny again or any other offense? Can I question him about that at this time? It's up to you, counsel. But I'm certainly interested. I'm sure you're not going to argue for a bad conduct discharge in this case, are you?

DC: That's correct, your Honor.

MJ: And you're going to ask the court not to impose a bad conduct discharge, is that correct?

DC: That's correct, your Honor.

MJ: Well, in some portion of the trial, do you expect to explain to me— You know, you can forgive a guy— an individual for making one mistake, but when he makes exactly the same mistake or commits the same offense a second time in a row before he's even punished for

10. *Fields v. State*, supra note 5.

11. *Government of Virgin Islands v. Aquino*, supra, note 3.

12. *United States v. Seivers*, 8 M.J. 63 (C.M.A. 1979); *United States v. Escobar*, 7 M.J. 197 (C.M.A.1979).

13. *United States v. Barlow*, supra, note 3, 152 U.S.App.D.C. at 344, 470 F.2d at 1253.

14. Id., at 344–45, 470 F.2d at 1253–54; citing *Reg v. Campbell*, (1899) 8 Que.C.B.R. 322, 2 Can.Crim.Cas. 357. See also, *United States v. Tamas*, 6 U.S.C.M.A. 502, 20 C.M.R. 218 (1955).

15. Raised by trial defense counsel in his comments to the review of the staff judge advocate in accordance with *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

the first one, that certainly raises some question in the court's mind concerning his suitability for military service. Do you expect to explain that to me at a later point in this trial?

As he is the dominant figure in a trial under the military justice system, a trial judge must avoid not only the existence, but also the appearance of unfairness in his court.[16] A judge must conduct himself and his court impartially and must not assume the role of an advocate or partisan.[17] "An accused is entitled to have his sentence as well as his guilt adjudged by court members who are uninfluenced by predetermined and fixed ideas." *United States v. Parker,* 6 U.S.C.M.A. 274, 285, 19 C.M.R. 400, 411 (1955) (separate opinion of Judge Quinn); see also *United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965); *United States v. Morgan,* 44 C.M.R. 699 (A.C.M.R.1971).

In this case, the trial judge's comments to counsel manifested a predilection to include a bad conduct discharge in the sentence. He effectively placed a burden upon the defense to overcome this preconceived opinion, could well have changed the defense strategy during the presentencing portion of the trial, and interfered with the right of the accused to remain silent without adverse inference. *United States v. Jackson,* 6 M.J. 116 (C.M.A.1979); *United States v. Lewis,* 7 M.J. 958 (A.F.C.M.R. 1979).

In all courts-martial the trial judge should be chary to make any statements which could be interpreted in any way to show bias, prejudice or personal animus toward a particular accused in the interest of having the trial free from doubt as to legality and fairness.

*United States v. Turner,* 46 C.M.R. 351 (N.C.M.R.1971). As the sentence included a bad conduct discharge, we find manifest prejudice to the substantial rights of the accused with respect to the sentencing process.

Accordingly, the findings of guilty are affirmed. The sentence is set aside. A rehearing on sentence may be ordered.[18]

ARROWOOD and MILES, Judges, concur.

16. *United States v. Conley,* 4 M.J. 327 (C.M.A. 1978).

17. *United States v. Lowe,* 11 U.S.C.M.A. 515, 29 C.M.R. 331 (1960); *United States v. Oakes,* 3 M.J. 1053 (A.F.C.M.R.1977), pet. denied, 4 M.J. 242 (C.M.A.1978); *United States v. Taylor,* 47 C.M.R. 445 (A.C.M.R.1973); Canon 3, Code of Judicial Conduct; ABA Standards, The Function of the Trial Judge, §§ 1.5, 6.4, the latter of which reads, "The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions . . ."

18. We note that in the clemency portion of the review of the staff judge advocate the convening authority was advised of the maximum sentence imposable by a general court-martial although this was a special court-martial. We have previously found such advice to be irrelevant to the reviewing authority's clemency deliberations, and error. *United States v. Harrison,* (unpublished) 5 M.L.R. 2252 (A.F.C.M.R. 1977), aff'd, 5 M.J. 34 (C.M.A.1978); *United States v. Stockman,* 1 M.J. 757 (A.F.C.M.R. 1975). The error is resolved by our setting aside the sentence in this case, but should not be repeated in any new review of the staff judge advocate.