UNITED STATES, Appellee,

v.

Sergeant Michael A. SNIPES,
258–98–2282, United States
Army, Appellant.

CM 444872.

U.S. Army Court of Military Review.

31 Jan. 1985.

Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, and Captain Barbara M. Lederer, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Michael W. Hoadley, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY, and WERNER, Appellate Military Judges.

OPINION OF THE COURT

PAULEY, Judge:

The appellant was convicted, in accordance with his pleas, by a military judge sitting alone as a general court-martial of charges of conspiracy to possess, sell, transfer, and distribute marijuana (one specification); possession and use of marijuana (two specifications), sell, transfer, and distribute marijuana (one specification); and possession of LSD (one specification), in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934 (1982). The sentence was a dishonorable discharge, confinement at hard labor

for twenty months, forfeiture of $400.00 pay per month for twenty months, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement at hard labor for one year and one day, forfeiture of $400.00 pay per month for twelve months, and reduction to the grade of Private E–1.[1]

The appellant alleges as error that the military judge abandoned his impartial role and became an advocate for the Government by questioning a defense witness on matters outside the scope of direct examination, suggesting to the Government a particularly · damaging sentencing argument, and by holding appellant's trial defense counsel in contempt of court.

I

This was a brief, "guilty-plea" trial; unremarkable except for the untoward conduct of the military judge. The appellant successfully passed the test of providence, detailing an odious history of use, possession, and transfer of narcotics. The trial defense counsel carefully outlined to the military judge what he intended to do during the sentencing portion of the trial. He first called a Criminal Investigation Division agent who testified that the accused had cooperated with the authorities in drug investigations after his apprehension. He next put the appellant on the witness stand for a relatively lengthy unsworn statement. Thereafter, he called the appellant's first sergeant stating: "We'd like to call Sergeant—First Sergeant Platt, *just for one question.*" (emphasis supplied.) First Sergeant Platt, in response to the one question, testified that the appellant had not "been a problem" in his unit since he had been charged with the offenses under consideration. The Government counsel indicated that he had no questions of the witness. The military judge then launched into a lengthy questioning of the first sergeant. He asked about a Sergeant Grooms,[2] the barracks roommate of the appellant and a co-conspirator. He then asked the witness: "What effect is the sentence of this court going to have on your unit?" The response was that it would have a great effect and that the first sergeant felt that the "courts have been very nice for the total amount of time that they could have punished said soldiers for doing the offenses that they have committed...." In other words, that insufficient confinement was being adjudged.

The following questioning then took place:

Q: Are you including Grooms in that?

A: Yes, sir.

Q: Do you feel that the troops believe that the courts have been lenient with Grooms and others?

A: (no response).

Q: Of course others—others have been boarded and Article 15'd and things like that too, haven't they?

A: Yes, sir.

Q: Okay, you are including those in—in your comments there, that the system's been lenient, the courts have been lenient, what?

The witness then answered that he felt that the courts had been lenient with soldiers from his unit and that he needed "the word to go out loud and clear that drugs are not going to be condoned and especially amongst [sic] my noncommissioned officers." First Sergeant Platt, in further response to the military judge's questions, explained that the appellant was in charge of the security guards responsible for regulating entry into a missile launch facility. As the trial judge was questioning the witness about the size of the unit and other matters, the defense counsel finally objected to the line of questioning, arguing that it was outside the scope of direct examina-

1. The convening authority disapproved Specification 2, Charge II; one of the two possession and use of marijuana specifications.

2. The record of trial establishes that the military judge in appellant's case had also served as the trial judge at the court-martial of Sergeant Grooms.

tion and was a solicitation of the witness's opinion of an appropriate sentence. The military judge overruled defense counsel's objection, but significantly, asked no further questions of the witness.

## II

■ The military judge has the right, of course, to question witnesses. Paragraphs 39*b*, 54*a*, *b*, Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter cited as MCM]; *United States v. Hobbs,* 8 M.J. 71 (C.M.A.1979); *United States v. Marshall,* 30 C.M.R. 117 (C.M.A. 1961). This is especially true where the evidence developed by direct and cross-examination by the parties is insufficient to allow proper resolution of the case. In *United States v. Madey,* 14 M.J. 651 (A.C. M.R.1982), *pet. denied,* 15 M.J. 183 (C.M.A. 1983), this Court set forth the oft-repeated assertion that the trial judge need not be relegated to the position of a figurehead or an umpire in a trial contest, but rather can take an active part in the proceedings. *United States v. Graves,* 1 M.J. 50 (C.M.A. 1975); *United States v. Blackburn,* 2 M.J. 929 (A.C.M.R.), *pet. denied,* 2 M.J. 166 (C.M.A.1976). In undertaking to develop evidence, the military judge must be careful not to depart from an impartial role and the test to determine whether he has so abandoned this role and become a partisan participant is a subjective one. Paragraph 54*b*, MCM; *United States v. Masseria,* 13 M.J. 868 (N.M.C.M.R.), *pet. denied,* 14 M.J. 171 (CMA 1982); *United States v. Bouie,* 18 M.J. 529 (A.F.C.M.R.1984).

■ We hold that the military judge crossed over that line of impartiality in this case and created the appearance, if not the actual existence, of unfairness. We are not unmindful of the fact that this was a judge alone trial. However, even though the latitude is greater for questioning of a witness by a military judge in such a trial, our Courts have held that the judge must nevertheless avoid the appearance, as well as the existence, of unfairness in his courtroom. *See United States v. Conley,* 4 M.J. 327 (C.M.A.1978); *United States v. Manu-*

*el,* 8 M.J. 822 (A.F.C.M.R.1979); *United States v. Turner,* 46 C.M.R. 351 (N.C.M.R. 1971). In this case, the military judge inappropriately questioned First Sergeant Platt on matters wholly outside the scope of the trial defense counsel's direct examination and improperly solicited his opinion as to an appropriate sentence for the appellant.

## III

■ After both counsel had completed their sentencing arguments, the military judge addressed counsel for both sides and the following transpired:

MJ: I'd like to throw something out to both of you for comment. If you want to make further argument I'll give you both one more shot. It seems to me it's possible to perceive a constituency out there in perhaps the division forward or just the battery, of troops for whom general deterrence is not a valid consideration, but of people who do their jobs because they're there, and do the right thing because it's right, who occasionally observe other folks getting over, and have their morale adversely effected as a result of that. These are not people who would be tempted to use hashish because they thought someone else was using it and not being punished for it, but of people who aren't going to use, but who nonetheless would have their morale and their job performance adversely affected because other people haven't pulled the same load in the battery or in the division, other people haven't met the same standards in the battery or in the division, other people haven't served as honestly and honorably as they have. Do we have a constituency out there that needs to be addressed in sentencing, who need to be told that doing the right thing is appropriate after all because people who don't pull their weight, who don't serve as honorably as they have receive some form of punishment for it? Captain Gsteiger?

TC: Your Honor, the government would simply agree in his opinion, there is that constituency out there and they are simi-

lar to the constituency that the government has previously addressed. These are people that, as Your Honor has mentioned, do their job and don't get involved in illegal activity simply because they are illegal. More than that I—the government feels that most of that has already been addressed in our argument and the specific constituency was succinctly stated by the military judge and we don't have anything to add to that.

MJ: Do you wish to address that, Captain Hunter?

DC: Yes, Your Honor. Your Honor, I'm sure that there's that constituency out there and I'm sure they exist, they're doing a good a [sic] job. I would like to see the government bring someone in that says their morale has been effected because they saw somebody using drugs. I don't think that ever happens. Maybe I'm commenting on the evidence, but they don't have any evidence here. We're all talking hypotheticals now, as far as I can tell, but you mentioned the fact that, as you argued for the government here, there's no—there's—these people who—

MJ: You want to run that past me again, Captain Hunter?

DC: Yes, Your Honor. I—I object to your—running this constituency by—in front of the government when they didn't argue it in the first place, and you brought it out. I don't feel that's fair, I don't feel that that's your job to bring that out. That may be something you want to consider in there, but I guess I should appreciate the fact that you're giving me an option to address it.

MJ: That's why I brought it up.

DC: So, I will take that opportunity, Your Honor, I still—

MJ: You might not have taken the opportunity. You might have benefited from sitting there quietly now that I hear what you're saying.

The defense counsel then concluded his argument on sentence in an unremarkable fashion. Thereafter, the military judge suspended the proceedings, and after a brief hearing, held appellant's counsel in contempt for insolence and inappropriately suggesting that "this court argued for the government" resulting in "grossly inappropriate" behavior.[3] The military judge ordered a fine of $50.00 for trial defense counsel.[4]

The remarks of the trial judge concerning a "constituency" to be considered in sentencing were, in the context of the trial, inappropriate, added nothing to the trial of the case, and created a substantial risk of the appearance of unfairness.[5] Moreover, the trial defense counsel's objection to the military judge's remarks, although perhaps spirited, certainly did not warrant contempt proceedings. Again, the risk of an appearance of unfairness as a result of these proceedings was substantial.

In *United States v. Rosser*, 6 M.J. 267 (C.M.A.1979), the Court of Military Appeals, citing *Conley, supra,* set forth the following standard as concerns the conduct of a court-martial:

> Moreover, we believe it incumbent on the military judge to act in the spirit of the Code by avoiding even the appearance of evil in his court room and by establishing the confidence of the general public in the fairness of the court-martial proceedings.

The appellant's trial did not meet that standard and an appearance of unfairness would have been evident to even the most casual of trial observers. We hold that the appellant was denied a fair sentencing

---

**3.** The record shows that trial defense counsel apologized eloquently and profusely during this hearing and explained that his comments were intended only as an objection to the military judge's remarks.

**4.** In a wise exercise of his judicial authority, the convening authority, acting in accordance with the advice of his staff judge advocate, disap-

proved the findings and sentence of the contempt proceedings.

**5.** We do not suggest that all comments to counsel by a military judge that may be interpreted as requests for additional argument are improper.

hearing in this case as a result of the totality of the conduct of the military judge in the questioning of First Sergeant Platt, his remarks to counsel after sentencing argument, and the contempt proceedings brought against the defense counsel. We will cure this error by ordering a rehearing on the sentence.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge MARDEN and Judge WERNER concur.