*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and BLOSSER
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Hleb KUKHARAU**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202300062**

———————————————

Decided: 26 April 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Stephen F. Keane (arraignment)
Yong J. Lee (trial)

Sentence adjudged 9 November 2022 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Lieutenant Jackson M. Beach, JAGC, USN* (argued)
*Major Colin W. Hotard, USMC*

For Appellee:
*Major Tyler W. Blair, USMC*

Judge BLOSSER delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Senior Judge KIRKBY joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

BLOSSER, Judge:

A special court-martial convicted Appellant, contrary to his pleas, of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice [UCMJ].[1]

This case is before us on direct appeal submitted by Appellant pursuant to Article 66(b)(1), UCMJ. Appellant asserts four assignments of error [AOEs], which we rephrase as follows: (1) whether the evidence is legally and factually sufficient to support Appellant's conviction; (2) whether the military judge abandoned his impartiality when he continued to ask Lance Corporal [LCpl] Martin whether the touching of his helmet was offensive after he repeatedly testified that it was not and was "just a regular correction" during combat training; (3) whether trial defense counsel was ineffective for failing to object to the military judge's suggestive, leading questions that eventually convinced LCpl Martin to change his testimony about whether Appellant's touching of his helmet was offensive; (4) whether the convening authority violated Appellant's due process right to a members panel when he referred this case to a military judge alone special court-martial?[2] We find no prejudicial error and affirm.

---

[1] 10 U.S.C. § 928.

[2] We have reviewed Appellant's fourth AOE and find it to be without merit. *See United States v. Wheeler*, 83 M.J. 581 (N-M. Ct. Crim. App. 2023) *review granted*, __ M.J. __, No. 23-0140/NA, 2023 CAAF LEXIS 427 (C.A.A.F. Jun. 23, 2023) (mem.); *see also United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

# I. BACKGROUND

The conduct at issue occurred while LCpl Martin[3] was a student and Appellant was his instructor during the entry-level Light Armored Reconnaissance Marine Course, which teaches Marines operator-level maintenance, driving techniques, turret operations, and water operations for Light Armored Vehicles [LAV]. During a nighttime segment of a field exercise [FEX], LCpl Martin was driving an LAV into an assembly area where other LAVs and Marines were staged.[4] Even though the LAVs' headlights were on,[5] Appellant dismounted LCpl Martin's LAV to provide additional safety by guiding LCpl Martin from the ground with hand and arm signals (i.e., "ground-guiding").[6] Witnesses described LCpl Martin as not paying attention and not doing what he was told; however, LCpl Martin was eventually able to get the LAV parked safely.

Once LCpl Martin parked the LAV, he began its shutdown procedures, but mistakenly shutdown the power systems in an improper sequence that can, but did not, damage the vehicle's communications equipment.[7] Appellant returned to the LAV and climbed partway up it until his torso was next to LCpl Martin's head at the driver's hatch.[8] He asked LCpl Martin what was taking so long and LCpl Martin explained that he shut the power systems down out of sequence.[9] Appellant then "chewed [LCpl Martin] out for it" in an "aggressive demeanor"[10] before "smack[ing]" LCpl Martin on the back of his helmet with enough force to cause LCpl Martin's head to jerk forward, but without causing injury.[11] On a scale from 1 to 10, LCpl Martin testified the force was a 5, meaning it was a "little bit more forceful than a tap, but less than a full punch."[12]

---

[3] All names in this opinion, other than those of Appellant, the military judges, and appellate counsel, are pseudonyms.

[4] R. at 148–49, 151.

[5] R. at 149, 151.

[6] R. at 169–71.

[7] R. at 149, 172.

[8] R. at 151–54.

[9] R. at 149.

[10] R. at 150.

[11] R. at 150–51.

[12] R. at 194.

LCpl Edwards testified he observed Appellant contact LCpl Martin's helmet with his hand, but opined that "struck" was a "very harsh word to use" because Appellant "wasn't . . . going out of his way to harm him."[13] LCpl Edwards did not observe Appellant "rear his hand back" or "come forward with force."[14] LCpl Edwards testified he "didn't think too much into it at the time" and ultimately described the contact as a "love tap."[15]

A few minutes after striking LCpl Martin, Appellant pulled him aside and apologized for "getting physical."[16]

The military judge recalled LCpl Martin after the parties had presented their cases and asked him whether the "contact" was offensive to him despite no injuries.[17] LCpl Martin responded, "At the moment, it was not, sir."[18] The military judge asked LCpl Martin to explain what he meant by "[a]t the moment it was not." LCpl Martin testified he "took it as a—just a regular correction."[19]

The military judge then defined battery for LCpl Martin: "An assault in which bodily harm is inflicted is called a battery, okay. A battery is an unlawful infliction of bodily harm to another made with force or violence by an intentional act[.]"[20] He went on to define "bodily harm" as "an offensive touching of another however slight" then explained further: "That means it could be a tap. It could be a punch. You know, degree of force. It could be anything from like 1, the scale that I gave you, to all the way to 10."[21] The military judge then asked LCpl Martin if, "based on [his] understanding of the social norms and [his] experience," the contact was offensive to him, however slight. LCpl Martin testified, "I'd say, yes, sir."[22]

The military judge sought clarification: "You told me earlier maybe it wasn't, but now you're saying—because you had a chance to reflect, explain

---

[13] R. at 201.

[14] R. at 207.

[15] R. at 207, 209.

[16] R. at 155.

[17] R. at 378.

[18] *Id.*

[19] *Id.*

[20] R. at 379.

[21] *Id.*

[22] *Id.*

why."[23] LCpl Martin explained, "Because normally just getting chewed out would be enough, but just, like, getting physical with somebody would just be unnecessary."[24] In response to a follow-on Defense question, LCpl Martin acknowledged that he first testified the contact was not offensive.[25] In a follow-up question, the military judge verified LCpl Martin did not previously consider the contact offensive because he "thought [he] was just getting corrected."[26] The military judge then instructed LCpl Martin to "really reflect back, right, or think about it right now, because you told me later on that you felt it was offensive, right?"[27] The military judge asked him whether the contact was "offensive to [him] during FEX-1 when this incident happened or was it not offensive to [him], that this was something that was normally acceptable to [him] at that time?"[28] The military judge instructed LCpl Martin to take his time before giving a definitive answer. LCpl Martin paused for 40 seconds then testified, "I'd say it would be offensive, sir."[29] Throughout this examination, the military judge was neither aggressive nor prescriptive.[30] Rather, his tone was calm and inquisitive, and he repeatedly encouraged LCpl Martin to take his time and think.[31]

Following announcement of the sentence—no punishment—the military judge gave his "strongest recommendation to [the convening authority] that he exercise his authority under Rules [sic] for Court-Martial1110(b)(2), to set aside the finding of guilty[.]"[32] In the Statement of Trial Results, the military judge also supplemented his oral comments with nearly 800 written words explaining his recommendation to set the finding aside. The convening authority considered Appellant's matters, the military judge's recommendation, and his Staff Judge Advocate's advice, but chose not to set aside the finding.[33]

---

[23] *Id.*

[24] *Id.*

[25] R. at 380.

[26] R. at 382–83.

[27] R. at 383.

[28] *Id.*

[29] *Id.*; Official Audio R. of Court-Martial Proceedings at 31:59–32:39.

[30] Official Audio R. of Court-Martial Proceedings at 25:00–32.45.

[31] *Id.*

[32] R. at 471; Statement of Trial Results at 2.

[33] Entry of Judgment; Convening Authority's Action.

## II. DISCUSSION

### A. The evidence is legally and factually sufficient to support Appellant's conviction.

#### 1. Standard of Review and Law

We review legal sufficiency de novo. To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[34] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[35] In doing so, we are mindful that "[f]indings may be based on direct or circumstantial evidence."[36]

To trigger this Court's factual sufficiency review, an appellant must request the review and "identify a weakness in the evidence admitted at trial to support an element . . . and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[37] After an appellant has made a specific showing of a deficiency in proof, we "*may* weigh the evidence and determine controverted questions of fact."[38] If we choose to evaluate the factual sufficiency of the evidence, we are to give "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence" and to "findings of fact entered into the record by the military judge."[39] We may not "dismiss, set aside, or modify [a] finding, or affirm a lesser finding" unless we are "clearly convinced that the finding of guilty was against the weight of the evidence."[40]

---

[34] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citation omitted).

[35] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[36] *United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.CM. 918(c); *see also United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) ("[T]he government is free to meet its burden of proof with circumstantial evidence.").

[37] *United States v. Harvey*, 83 M.J. 685, 691 (N-M. Ct. Crim. App. 2023) *review granted*, __ M.J. __, No. 23-0239/NA, 2024 CAAF LEXIS 13 (C.A.A.F. Jan. 10, 2024) (mem.).

[38] Article 66(d)(1)(B)(ii), UCMJ, 10 U.S.C. § 866(d)(1)(B)(ii) (emphasis added).

[39] Article 66(d)(1)(B)(ii), UCMJ, 10 U.S.C. § 866(d)(1)(B)(ii).

[40] Article 66(d)(1)(B)(iii), UCMJ, 10 U.S.C. § 866(d)(1)(B)(iii); *see also Harvey*, 83 M.J. at 692.

To prove Appellant committed an assault consummated by a battery upon LCpl Martin, the Government was required to show that: 1) Appellant did bodily harm to LCpl Martin; 2) the bodily harm was done unlawfully; and 3) the bodily harm was done with force or violence.[41] "'Bodily harm' means an offensive touching of another, however slight."[42] Combined, the second and third elements mean the Appellant "wrongfully caused the contact, in that no legally cognizable reason existed that would excuse or justify the contact."[43] An act "done in the proper performance of a legal duty is justified and not unlawful."[44] "It is . . . not a battery to touch another to attract the other's attention or to prevent injury."[45]

It is axiomatic that the determination of whether a touching is offensive is an objective one. Evidence showing that a victim perceives a strike as offensive may be relevant for the ultimate question, but it is not dispositive.

*2. Analysis*

On appeal, Appellant does not dispute that he struck LCpl Martin on the head. Rather, he only challenges the legal and factual sufficiency of the evidence relating to the second and third elements, asserting there exists a "deficiency of proof that the touching of [LCpl Martin's] helmet was (a) offensive and (b) unlawful."[46]

To support his argument that the evidence was insufficient to prove the strike was offensive, Appellant relies on LCpl Martin's initial answer to the military judge's question that he took the strike as "just a regular correction," the protective design of a crewman's helmet, LCpl Martin's lack of a reaction or reporting of the strike, and LCpl Martin's favorable end-of-course critique. Connected with his second and third AOEs, Appellant argues for us to disregard LCpl Martin's subsequent testimony that the strike was offensive, contending that LCpl Martin felt pressured by the military judge to change his testimony.[47]

---

[41] *Manual for Courts-Martial, United States* (2019 ed.) [MCM], pt. IV, para. 77.b.(2).

[42] *MCM*, pt. IV, para. 77.c.(1)(a).

[43] *United States v. Bonner*, 70 M.J. 1, 3 (C.A.A.F. 2011) (citing *United States v. Johnson*, 54 M.J. 67, 69 (C.A.A.F. 2000)).

[44] Rule for Courts-Martial [R.C.M.] 916(c).

[45] *MCM*, pt. IV, para. 77.c.(3)(d).

[46] Appellant's Br. at 22.

[47] Appellant's Br. at 23–24.

LCpl Martin described the force of Appellant's strike as a 5 out of 10, a "little bit more forceful than a tap, but less than a full punch."[48] LCpl Edwards, an eyewitness, described Appellant's strike as a "love tap."[49] Appellant, himself, recognized the impropriety of striking LCpl Martin, and apologized to LCpl Martin for "getting physical" with him.[50] Once LCpl Martin understood the legal meaning of "offensive," he testified that he found Appellant's strike offensive "[b]ecause normally just getting chewed out would be enough, but just, like, getting physical with somebody would just be unnecessary."[51] As discussed *infra*, we find the military judge's questioning of LCpl Martin permissible.

Appellant asserts "the helmet slap was performed in the line of duty by a combat training instructor to get the attention of an inattentive Marine while he was operating a massive, dangerous, armored vehicle, to prevent him from injuring the equipment or any of the Marines in the vicinity."[52] We disagree. The evidence showed Appellant struck LCpl Martin *after* his corrective instruction began—specifically, after LCpl Martin informed Appellant he had executed the shutdown procedure out of sequence. The evidence also showed Appellant struck LCpl Martin *after* the LAV was safely parked and no longer in operation—i.e., the strike was in response to the incorrect *shutdown* procedures.

While operating a 14-ton combat vehicle in a crowded assembly area at night is certainly a dangerous endeavor, that does not justify an instructor striking a student while correcting his previous actions—doubly so when in a noncombat, training environment and the potential dangers of the vehicle's operation no longer exist because it is stationary.[53]

Considering this evidence in the light most favorable to the Government, we conclude that a reasonable factfinder could have found all the essential elements of the offense beyond a reasonable doubt. Thus, the evidence is legally sufficient to support the conviction.

---

[48] R. at 194.

[49] R. at 207.

[50] R. at 155.

[51] R. at 379.

[52] Appellant's Br. at 27–28.

[53] We similarly reject Appellant's legal contention that slapping a Marine's helmet and a "good chewing out" are simply part of Marine Corps culture. *See* Appellant's Br. at 29–30.

Appellant has met the threshold requirement for factual sufficiency review and made a specific showing of a deficiency in proof under Article 66(d)(1)(B)(i), UCMJ. Giving appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence, we are not clearly convinced that the finding of guilty is against the weight of the evidence in this case. Accordingly, we find the evidence factually sufficient to support the conviction.

## B. The military judge did not abandon his impartiality.

Appellant asserts the military judge abandoned his impartiality when, after LCpl Martin testified Appellant's strike to his helmet was "just a regular correction," the military judge continued to ask LCpl Martin whether he considered the strike offensive. Appellant characterizes the military judge's actions as badgering the witness by "'the most dominant figure in a trial by court-martial.'"[54]

### 1. Standard of Review and Law

If not raised until appeal, the issue of military judge disqualification is reviewed for plain error.[55] To establish plain error, an appellant must show that: (1) error exists, (2) the error is plain or obvious, and (3) the error resulted in material prejudice.[56] A criminal accused has a constitutional right to an impartial judge.[57] Thus, the test for prejudice asks whether any error is harmless beyond a reasonable doubt.[58]

"There is a strong presumption that a military judge is impartial in the conduct of judicial proceedings."[59] "When a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into

---

[54] Appellant's Br. at 37 (quoting *United States v. Hardy*, 30 M.J. 757, 760–61 (A.C.M.R. 1990)).

[55] *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011).

[56] *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (citation omitted).

[57] *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citations omitted).

[58] *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019); *see also United States v. Cooper*, 51 M.J. 247, 250 (C.A.A.F. 1999) (an accused's right to an impartial judge stems from due process) (citations omitted).

[59] *United States v. Foster*, 64 M.J. 331, 333 (C.A.A.F. 2007) (citing to *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001).

doubt by the military judge's questions."[60] The test is objective, assessed from the perspective of a reasonable person observing the proceedings.[61]

"A military judge has wide latitude to ask questions of witnesses."[62] "[W]hile a military judge must maintain his fulcrum position of impartiality, the judge can and sometimes must ask questions in order to clear up certainties in the evidence or to develop the facts further."[63] Neither rules nor case law preclude a military judge from eliciting evidence which may favor one party or another. A military judge is not prohibited from asking the same question a different way when the witness appears to be confused. Where the defense fails to object at trial to a military judge's alleged partiality, it may present an inference the defense believed the military judge remained impartial.[64]

While an expert witness may provide opinion testimony that embraces an ultimate issue, opinion testimony from lay witnesses is very limited. [65] "[Military Rule of Evidence] 701 establishes a two-part test for admissibility of lay opinion: (1) the opinion must be rationally based on the witness's perception; and (2) the opinion must be helpful to the determination of a fact in issue."[66] "It is generally held . . . that opinion testimony is not helpful where it does no more than instruct the factfinder as to what result it should reach."[67]

### 2. No Plain or Obvious Error

We find nothing impermissible about the military judge asking an alleged victim if he felt a strike was offensive or seeking clarification when the witness qualifies his response with "[a]t the moment." These questions are well within the latitude afforded a military judge. However, the military judge went on to provide LCpl Martin with the legal definitions of "battery," "bodily harm," and "offensive touching" before asking him if he found the strike offensive "based on [his] understanding of the social norms and [his] experience." By doing this,

---

[60] *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (citations and quotations omitted).

[61] *Burton*, 52 M.J. at 226.

[62] *Id*. (citing *United States v. Acosta*, 49 M.J. 14, 17 (1998)).

[63] *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995) (citing *United States v. Dock*, 40 M.J. 112 (CMA 1994); *United States v. Tolppa*, 25 M.J. 352 (CMA 1987); *United States v. Reynolds*, 24 M.J. 261 (CMA 1987)).

[64] *Foster*, 64 M.J. at 333 (citing *Burton*, 52 M.J. at 226) (citation omitted).

[65] *Compare* Mil. R. Evid. 701 *with* Mil. R. Evid. 704.

[66] *United States v. Byrd*, 60 M.J. 4, 6 (C.A.A.F. 2004).

[67] *United States v. Littlewood*, 53 M.J. 349, 353 (C.A.A.F. 2000) (citation omitted).

the military judge strayed beyond the latitude afforded to him because it sought an improper opinion. In essence, the military judge asked a lay witness for his opinion on whether an element of the crime was met, which exceeds the limits of Military Rule of Evidence 701. However, since there was no objection at trial and this issue was not raised on appeal, we consider this line of questions only as it relates to the military judge's impartiality.

The military judge questioned LCpl Martin in a non-aggressive, inquisitive, neutral manner; found Appellant guilty; adjudged no punishment; and provided a detailed oral and written explanation of why he felt justice would best be served by setting the finding aside. Taken as a whole, we conclude that a reasonable person observing Appellant's court-martial would not doubt the military judge's impartiality.

Accordingly, we find no error, plain or otherwise.

## C. The trial defense counsel was not ineffective.

Appellant argues his trial defense counsel was ineffective for failing to object to the military judge's continued questioning of LCpl Martin. Appellant contends,

> [T]he military judge's questions warranted objections on multiple grounds: (1) he shed his impartiality by asking questions that were not prospectively neutral; (2) his question of whether the touch was offensive had been asked and answered (in the negative), and (3) he asked several leading questions that were designed to get Lance Corporal Mike to change his testimony to say the helmet tap was offensive.[68]

Appellant argues, "But for the trial defense counsel's failure to object, [LCpl Martin] would not have reversed his initial testimony that the alleged touch was not offensive."[69] LCpl Martin first opined that he did not find the touch offensive. If this testimony remained unchanged due to sustained objections to the follow-on questions, Appellant reasons that it would have negated an element of the offense.[70]

---

[68] Appellant's Br. at 41.

[69] Appellant's Br. at 42.

[70] *Id.*

*1. Standard of Review and Law*

This Court reviews ineffective assistance of counsel claims de novo.[71] In order to prevail on a claim of ineffective assistance of counsel, an appellant must show both deficient performance and prejudice. To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[72] Appellant has the burden of demonstrating both deficiency and prejudice including establishing the truth of factual matters underlying his claim of ineffective assistance.[73] "Failure to raise a meritless argument does not constitute ineffective assistance."[74]

With regard to the second prong of the test, Appellant must show "a reasonable probability that, but for counsel's error, there would have been a different result."[75]

*2. Trial Defense Counsel's Performance was not Deficient*

We address each of Appellant's proposed objections separately and find each without merit.

As stated *supra*, we reject Appellant's argument that the military judge's questions were not neutral and were evidence of impartiality. No question encouraged a particular answer. Accordingly, we find the first and third proposed objections would have been meritless.

Similarly, we reject Appellant's contention that an "asked and answered" objection would have been meritorious. Each time the military judge asked a question related to whether the touch was offensive, he sought additional explanation or clarification, including after trial defense counsel's follow-up questions.

---

[71] *United States v. Rivero*, 82 M.J. 629, 635, (N-M. Ct. Crim. App. 2022); *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021); *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020) (citations omitted).

[72] *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984)).

[73] See *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991); *Denedo v. United States*, 66 M.J. 114, 129 (C.A.A.F. 2008), aff'd, 556 U.S. 904, 129 S. Ct 2213 (2009).

[74] *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997) (citations omitted).

[75] *United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004) (citing *Strickland*, 466 U.S. at 694); see *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (Such reasonable probability requires "a substantial, not just conceivable, likelihood of a different result.") (citation and internal quotations omitted).

We find no deficiency in trial defense counsel's performance.

*3. Prejudice*

Even if trial defense counsel's performance was deficient, Appellant has shown no reasonable probability of a different result. Notwithstanding LCpl Martin's recall testimony, the evidence was more than sufficient to convict Appellant, including whether it is objectively offensive to slap a student's helmet to emphasize corrective instruction.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[76]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[76] Articles 59 & 66, UCMJ.